Gordon J. GRUBE and Julie Grube, Plaintiffs,

v.

John L. DAUN, Louis Achter and Secura Insurance, Defendants.

Gordon J. GRUBE and Julie Grube, Plaintiffs-Appellants,

v.

Jerry THIEL, Defendant-Respondent. [Case No. 91–2312.]

Gordon J. GRUBE and Julie Grube, Plaintiffs,

v.

Jerry THIEL, Defendant.

Gordon J. GRUBE and Julie Grube, Plaintiffs-Appellants-Respondents,

v.

John L. DAUN and Louis Achter, Defendants-Respondents,

SECURA INSURANCE, Defendant-Co-Appellant.†
[Case No. 91–2322.]

Court of Appeals

† Petition to review denied.

30

*Nos. 91–2312, 91–2322. Submitted on briefs June 30, 1992.—Decided November 11, 1992.*

(Also reported in — N.W.2d —.)

41

On behalf of plaintiffs-appellants-respondents Gordon J. Grube and Julie Grube, the cause was submitted on the briefs of *Lutz, Burnett & McDermott* of Chilton and *Jerome L. Fox* of *Olson, Winter and Fox* of Two Rivers.

On behalf of defendant-co-appellant Secura Insurance, the cause was submitted on the briefs of *John D. Claypool* and *Michael S. Siddall* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J.   Gordon and Julie Grube appeal from the portion of an order granting Jerry Thiel's motion for summary judgment. They also appeal from the portion granting partial summary judgment to John Daun and Louis Achter. Secura Insurance (Secura) appeals the denial of summary judgment on Louis Achter's claims against Secura.[1]

Because we conclude that an "as is" clause is not necessarily a bar to claims based on negligence and misrepresentation when a real estate sales agent has made affirmative representations about an aspect of the property, we reverse the portion of the trial court's order granting summary judgment to Thiel and Daun. We also reverse that portion of the trial court's order granting

---

[1] In an order dated October 29, 1991, this court granted Gordon and Julie Grube's petition for leave to appeal that portion of the nonfinal order of the circuit court dated September 18, 1991 granting partial summary judgment to John Daun and Louis Achter. In the same order, this court also granted Secura Insurance's petition for leave to appeal that portion of the circuit court's order denying Secura's motion for summary judgment. The Grubes properly commenced an appeal as of right of that portion of the circuit court's order dismissing all claims against Jerry Thiel.

partial summary judgment to Achter because a claim for strict responsibility for misrepresentation may not be stated against a former owner of the property who does not gain financially from a subsequent sale. Finally, we affirm that portion of the trial court's order denying Secura's motion for summary judgment because Secura is estopped from raising any challenges to coverage and therefore must indemnify Achter up to the limits of his policy.

## FACTS

In 1974, Louis Achter bought from his father a farm located in the town of Brothertown in Calumet county. While either Louis or his father owned the property, an underground gasoline tank was installed for the farm's fuel storage. In 1978, Achter noticed that this fuel tank was leaking and he had the gasoline pumped out of the tank. He then stopped using the fuel tank. Achter never told anyone about the gasoline leak.[2]

Secura provided insurance coverage for Achter from 1975 until 1986. The relevant parts of the farmowners policy state:

---

[2] Section 144.76(2)(a), Stats. (1977), which went into effect on May 21, 1978, provided:

Persons possessing or controlling a hazardous substance shall immediately notify the department of any discharge not exempted under sub. (9).

The statute was later amended so that at the time Achter sold the farm to Daun in 1985, sec. 144.76(2)(a), Stats. (1983-84), read as follows:

A person who possesses or controls a hazardous substance or who causes the discharge of a hazardous substance shall notify the department immediately of any discharge not exempted under sub. (9).

The discharge of gasoline on the property was not exempt in either version of the statute by sec. 144.76(9).

We will pay all sums arising out of any one loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this policy.

If a claim is made or suit is brought against the insured person for liability under this coverage, we will defend the insured person at our expense, using lawyers of our choice. We are not obligated to defend after we have paid an amount equal to the limit of our liability. We may investigate or settle any claim or suit as we think appropriate.

In 1985, Achter sold the property to John Daun. Later that year, Daun sold a portion of the land and several buildings to Gordon and Julie Grube on an "as is" basis. The preprinted offer to purchase stated, "Seller warrants and represents to Buyer that Seller has no notice or knowledge of any . . . (c) structural or mechanical defect of material significance in property, including inadequacy for normal use of mechanical systems, sanitary disposal systems and of well, and of unsafe well water according to state standards." The "as is" clause was written in as an exception to these warranties and representations and reads: "Buyer is buying the property in a [sic] as is condition without any warranties." Daun provided the Grubes with water and septic tests which were a condition of closing. After the Grubes took possession of the property, they discovered that the wells had been contaminated by the leaks from the underground gasoline tank. The Wisconsin Department of Natural Resources confirmed the existence of pollutants on the Grubes' land and assessed the cost of decontamination at over $90,000.

In December of 1988, the Grubes filed a complaint against Daun. Later amendments named Achter and Secura as additional defendants. Daun filed a cross-

claim against Achter. Achter also filed a third-party complaint against Secura demanding that Secura provide Achter with both a defense and insurance coverage under his farmowners policy.

In October of 1989, the Grubes brought a separate action against Jerry Thiel, Daun's real estate broker. In February of 1990, the two suits were consolidated.

Daun filed a motion for summary judgment on the Grubes' claims. Achter filed motions for summary judgment against the claims of the Grubes, against the cross-claim of Daun, and on his own third-party claim against Secura. Thiel joined all motions of Daun and Achter against the Grubes. Secura filed a motion for summary judgment on Achter's third-party claim and the claims of the Grubes.

The trial court granted summary judgment dismissing all claims against Thiel, which consisted of negligence, intentional misrepresentation, strict responsibility for misrepresentation, negligent misrepresentation and violation of sec. 100.18, Stats., deceptive advertising practices. The court held that the negligence and misrepresentation claims were barred by the inclusion of an "as is" clause in the sales contract which eliminated any duty to inspect or disclose. It also held that there was no evidence of a "deceptive practice" within the meaning of sec. 100.18 and questioned whether the section applied in the real estate sales context.

The trial court also dismissed the Grubes' claims against Daun for breach of warranty, negligent misrepresentation, intentional misrepresentation, and strict responsibility for misrepresentation. The court reasoned that the breach of warranty and misrepresentation claims were barred by the "as is" clause, which eliminated any duty for Daun to investigate possible problems. Further, the court held there was no showing

that Daun knew about the defects in the land or that he made any statements to the Grubes; therefore, Daun could not be held liable for misrepresentation.

The court granted summary judgment to Achter dismissing the Grubes' claim of strict responsibility for misrepresentation. The court did not explain its holding; it simply stated that the facts did not disclose any basis for this claim.

Finally, the trial court denied Secura's motion for summary judgment. The court held that the Grubes' claims against Achter fell within the policy's coverage and that the exclusion for damage to the insured's own property did not apply as the property was no longer owned by Achter. The court limited its holding, however, by stating, "[T]he insured's potential liability, however, must be limited to coverage for negligent acts."

The Grubes appeal the dismissal of all of their claims against Daun, the dismissal of one claim against Achter, and the dismissal of their case against Thiel. Secura appeals the denial of its motion for summary judgment against Achter. The appeals were consolidated by order of this court.

## SUMMARY JUDGMENT OF THE GRUBES AGAINST THIEL

The first issue the Grubes raise is whether a real estate broker is protected from liability for misrepresentations and a failure to investigate by the insertion of an "as is" clause in the purchase contract when neither the broker nor the seller knew the land was contaminated. We conclude that a broker may be liable for misrepresentation when he or she makes a positive representation about an aspect of the property even if the property is sold "as is." For that reason, we reverse.

Thiel was Daun's real estate broker in the 1985 sale to the Grubes of the land and buildings at issue. Thiel also showed the property to the Grubes prior to their purchase. The land was sold to the Grubes on an "as is" basis, which Thiel pointed out to the Grubes before they signed the contract. It was several years after the purchase when the Grubes discovered that the wells on the property were contaminated by gasoline, a condition which existed before they bought the property.

As we stated before, the Grubes brought five causes of action against Thiel: (1) negligence, (2) negligent misrepresentation, (3) intentional misrepresentation, (4) strict responsibility, and (5) deceptive or misleading advertising in violation of sec. 100.18, Stats. The trial court dismissed all five claims upon Thiel's motion for summary judgment.

When reviewing the trial court's decision on a motion for summary judgment, we apply the same analysis as does the trial court. *Driver v. Driver,* 119 Wis. 2d 65, 69, 349 N.W.2d 97, 100 (Ct. App. 1984). The Wisconsin Supreme Court has summarized that analysis as follows:

> The court must initially examine the pleadings to determine whether a claim has been stated and whether a material issue of fact is presented. If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's . . . affidavits or other proof to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 802.08(2). To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff. If the moving party has made a *prima facie* case for summary judgment,

the court must examine the affidavits and other proof of the opposing party . . . to determine whether there exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial.

*Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476-77 (1980). Summary judgment should be granted only where the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy. *Id.* at 338, 294 N.W.2d at 477.

We first examine whether the plaintiffs' complaint has presented claims. We are required to read the complaint liberally to do substantial justice among the parties. *Strid v. Converse,* 111 Wis. 2d 418, 422, 331 N.W.2d 350, 353 (1983).

The first four claims of negligence, negligent misrepresentation, intentional misrepresentation, and strict responsibility are claims in tort. The general rule on an agent's liability in tort to third persons was stated by Wisconsin Supreme Court as follows:

An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

*Purtell v. Tehan,* 29 Wis. 2d 631, 639, 139 N.W.2d 655, 659 (1966) (quoting Restatement (Second) of Agency sec. 343 (1957)). Therefore, Thiel could be liable in tort for his actions while an agent for the seller, Daun.

After a careful examination of the allegations in the complaint, we are satisfied that claims have been stated for the first four causes of action of negligence, strict responsibility, and intentional and negligent misrepresentation. In part, these claims are premised upon affirmative misrepresentations by Thiel; the complaint also asserts that Thiel failed to independently investigate the real estate to discover the contamination, which breached a duty to the buyers to inform them of material facts related to the real estate. *See* Wis. Adm. Code sec. **RL 24.07**.

■

In an action for negligence, the complaint must allege a duty of care on the part of the defendant; a breach of that duty; a causal connection between the conduct and the injury; and an actual loss or damage as a result of the injury. *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976).

Wisconsin Adm. Code sec. **RL 24.07** imposes a duty upon a broker to conduct a reasonably competent and diligent investigation to determine the existence of material facts adverse to the transaction. If such facts are discovered, they must be revealed in a timely manner in writing to the buyer. Wisconsin Adm. Code sec. **RL 24.07**(1). The complaint clearly alleges that Thiel breached this duty through his failure to investigate, discover, and disclose the gasoline contamination and other structural and mechanical defects to the Grubes prior to their purchase of the property.

■

The complaint also alleges that in purchasing the property, the Grubes relied upon Thiel to fairly represent to them any difficulties the broker observed or should have observed in the exercise of ordinary care. As a result of the purchase, the Grubes now are responsible

for cleaning up the contaminated property at substantial expense. These allegations are sufficient to support the remaining elements of negligence.

It should be noted that liability does not always follow when negligence and negligence as cause-in-fact are present. Public policy reasons may prevent liability from being imposed. *Becker v. State Farm Mut. Auto. Ins. Co.,* 141 Wis. 2d 804, 817, 416 N.W.2d 906, 912 (Ct. App. 1987). But our supreme court has stated repeatedly that it is better to have a full factual resolution of the action by trial before policy factors will be taken into consideration to preclude liability for negligence. *Citizens State Bank v. Timm, Schmidt & Co.,* 113 Wis. 2d 376, 387, 335 N.W.2d 361, 366–67 (1983); *see also Coffey,* 74 Wis. 2d at 543, 247 N.W.2d at 140–41. Accordingly, we will not consider public policy factors to preclude liability at this stage of the proceeding.

We turn now to an examination of whether the complaint states claims of misrepresentation. The misrepresentation claims are based upon affirmative misrepresentations allegedly made by Thiel to the Grubes prior to their purchase concerning the property's suitability for business, residential, recreation and family purposes. The Grubes also allege misrepresentation through nondisclosure.

The different and common elements of the three types of misrepresentation alleged are discussed at length in *Whipp v. Iverson,* 43 Wis. 2d 166, 169–70, 168 N.W.2d 201, 203–04 (1969); *see also* Wis J I—Civil 2400-03. The common elements of the three types of misrepresentation consist of (1) the defendant making a factual representation, (2) which was untrue, and (3) which the plaintiff believed to be true and relied on to

53

his or her detriment. *Whipp,* 43 Wis. 2d at 169, 168 N.W.2d at 203.

In their complaint, the Grubes allege that Thiel made misrepresentations of fact by stating the real estate would be suitable for business, residential, recreation and family purposes. These representations are alleged to be untrue through the Grubes' claims that the subsurface water supply is threatened with contamination by gasoline and that the furnace and residential water system are incapable of being used as represented by Thiel. The Grubes also allege they relied on the representations by Thiel in their purchase of the property and because of this purchase are now responsible for its clean-up and repair. These allegations support the three common elements of the three types of misrepresentation. *See id.*

In a claim of intentional misrepresentation, the plaintiff must allege two additional elements. First, the complaint must allege that the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false. *Lundin v. Shimanski,* 124 Wis. 2d 175, 184, 368 N.W.2d 676, 681 (1985); *see also* Wis J I—Civil 2401. Second, the complaint must allege that the defendant made the representation with intent to defraud and to induce another to act upon it. *Lundin,* 124 Wis. 2d at 184, 368 N.W.2d at 681. The Grubes' complaint alleges that Thiel failed to investigate the property adequately in order to reliably inform himself of the actual condition of the real estate and its improvements. It also alleges that Thiel intentionally misled the Grubes when showing them the property for their possible purchase. In construing the complaint liberally, we conclude these additional allegations

are sufficient to support the two additional elements of an intentional misrepresentation claim.

In addition to the three common elements of misrepresentation, strict responsibility for misrepresentation requires that two more elements also must be alleged. First, the complaint must allege that the defendant made the representation based on his or her own personal knowledge, concerning a matter about which he or she purports to have knowledge, so that he or she may be taken to have assumed responsibility as in the case of warranty. *Gauerke v. Rozga,* 112 Wis. 2d 271, 280, 332 N.W.2d 804, 809 (1983). Second, the complaint must allege that the defendant had an economic interest in the transaction. *Id.; see also* Wis J I—Civil 2402. The complaint alleges in its strict responsibility for misrepresentation claim that Thiel made the representations based on his own personal knowledge, or in circumstances in which he ought to have known the truth or untruth of the representations he made.It also alleges that representations were made to induce the Grubes to buy the property, for which a real estate commission was paid to Thiel as the listing agent of the property. These allegations are sufficient to support the additional elements for a claim of strict responsibility for misrepresentation.

An allegation of negligent misrepresentation requires only one element be alleged in addition to the three common elements: the complaint must allege that the defendant was negligent in making the misrepresentation. *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.,* 153 Wis. 2d 589, 593 n.2, 451 N.W.2d 456, 459 (Ct. App. 1989); *see also* Wis J I—Civil 2403. The Grubes' complaint alleges that Thiel negligently made the misrepresentations through his failure to exercise the ordinary

care of a real estate broker in discovering and disclosing significant difficulties with the real estate. This additional element completes the Grubes' claim for negligent misrepresentation.

For allegations of intentional misrepresentation through nondisclosure, the general rule is that "silence, a failure to disclose a fact, is not an intentional misrepresentation unless the seller has a duty to disclose. If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a representation of the nonexistence of the fact." *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 26, 288 N.W.2d 95, 99–100 (1980) (footnote omitted). This general rule also applies to negligent misrepresentation and strict responsibility. *See* Wis J I—Civil 2402–03. Since *Ollerman*, Wis. Adm. Code sec. **RL 24.07** was created which clarified the existence and extent of the broker's duty to disclose material facts. As we discussed above, the complaint sets forth facts sufficient to support the existence of this duty on the part of Thiel.

We thus are satisfied that the Grubes' complaint alleges facts to support claims of misrepresentation as set forth in *Whipp*, both affirmatively and through nondisclosure.

We next examine whether the Grubes have stated a claim for deceptive advertising under sec. 100.18(1), Stats.[3] The trial court held that they had not because

---

[3] Section 100.18(1), Stats., reads:

No . . . agent . . . with intent to sell . . . any real estate . . . or with intent to induce the public in any manner to enter into any contract or obligation relating to the . . . purchase [or] sale . . . of any real estate . . . shall make, publish, disseminate, circulate, or place before the public . . . in this state, in a newspaper, magazine or other

"[t]here is absolutely no evidence of any 'deceptive practice' even if the Statute were applicable to real estate sales, which I doubt." Thiel argues that the scope of sec. 100.18(1) is limited to the sale of consumer goods and retail consumer transactions. Our examination of the statute and the cases which have applied it leads us to conclude otherwise.

Although on its face this statute seems to apply only to advertising practices, the Wisconsin Supreme Court and this court have made clear that the statute intends to protect the public from all untrue, deceptive or misleading representations made in sales promotions, including representations made in face-to-face sales where no media advertising is involved. *See, e.g., State v. Automatic Merchandisers of America, Inc.,* 64 Wis. 2d 659, 665, 221 N.W.2d 683, 686–87 (1974), and *Bonn v. Haubrich,* 123 Wis. 2d 168, 173, 366 N.W.2d 503, 505 (Ct. App. 1985). In addition, this court has applied sec. 100.18, Stats., to representations in the sales of real estate as well as consumer goods. *Rach v. Kleiber,* 123 Wis. 2d 473, 484–85, 367 N.W.2d 824, 830 (Ct. App. 1985). We hold that the misrepresentations by Thiel alleged in the Grubes' complaint, if proven, are "deceptive advertising" within the scope of sec. 100.18; therefore, the complaint also states a claim under this section.

publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such . . . purchase [or] sale . . . of such real estate . . . or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Our next step is to determine whether the pleadings have raised material issues of fact. Thiel's answer denies failing to reasonably investigate the property, denies making any representations to the Grubes about the condition of the property, and denies failing to disclose the contamination of wells and structural and mechanical defects. Thiel's answer also denies advertising the property in a manner that failed to disclose the difficulties with the property and denies promoting the property with deceptive or misleading statements. The answer asserts that the Grubes were given adequate opportunity to discover any defects of the property prior to purchase. The pleadings raise material issues of fact on the claims brought by the Grubes.

We next examine the moving party's (in this case, Thiel's) affidavits or other proof to determine whether he has made a *prima facie* case for summary judgment on each claim under sec. 802.08(2), Stats. In order to make a *prima facie* case for summary judgment, Thiel must have asserted defenses which would defeat the claims stated by the Grubes. *See Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477.

The only supporting affidavits or other proof upon which Thiel has relied in his motion for summary judgment are the real estate sales contract document and the affidavit of Gordon Grube. Thiel's argument for the granting of summary judgment on the negligence and misrepresentation claims is based on the "as is" clause in the sales contract. Grube's affidavit admits that Grube was aware of the clause when he signed the contract.

Thiel argues that the "as is" clause shifted the burden to investigate onto the Grubes and therefore Thiel had no duty to investigate and no duty of full and fair disclosure. As discussed above, facts alleged by the

58

Grubes in support of their negligence, negligent misrepresentation and misrepresentation through nondisclosure tort claims could show breaches by Thiel of these duties. However, if Thiel did not have the duty to investigate or the duty of full and fair disclosure, these claims would not survive summary judgment.

Normally, the effect of an "as is" clause is to alert the buyer that he or she must determine the condition of the property being purchased. However, when the seller, or the seller's agent, makes affirmative representations about the condition of the property, the "as is" clause does not relieve the seller or the agent from the duty to investigate the representation and disclose to the potential buyer the results of that investigation. Here, the motions for summary judgment filed by Daun and his agent Thiel are based upon the "as is" clause. The Grubes alleged facts by counteraffidavit asserting that Daun and Thiel made affirmative misrepresentations. A material issue of fact thus exists which must be submitted to the finder of fact for resolution.

Thiel relies upon *Omernik v. Bushman,* 151 Wis. 2d 299, 444 N.W.2d 409 (Ct. App. 1989), as authority to shield himself from liability through the use of an "as is" clause. Under *Omernik,* this court held that a real estate purchase contract to sell property "as is" and without any warranties would defeat a claim by the buyer for alleged breaches of implied or express warranties by the seller. *Id.* at 300, 444 N.W.2d at 410. The question here is whether an "as is" clause shields the seller and his agent only from breach of warranty claims in contract, or also from tort claims based on misrepresentation.

Wisconsin follows the general rule that integration clauses which negate the existence of any representa-

tions not incorporated into the contract may not be used to escape liability for the misrepresentations. *See Anderson v. Tri-State Home Improvement Co.,* 268 Wis. 455, 459, 67 N.W.2d 853, 856-57 (1955). The supreme court more recently has explained that, as a matter of public policy, tort disclaimers in contracts will not be honored unless the disclaimer is specific as to the tort it wishes to disclaim. In order to be effective, the disclaimer must make it apparent that an express bargain was struck to forgo the possibility of tort recovery in exchange for negotiated alternate economic damages. *Phillips Petroleum Co. v. Bucyrus-Erie Co.,* 131 Wis. 2d 21, 33, 388 N.W.2d 584, 589 (1986).

Even if the scope of the "as is" clause extended outside of the warranty context, the clause in the Daun-Grube contract does not specify, or even refer to, negligence or misrepresentation as required by *Phillips*. It also does not show that the clause was reached through bargaining between the parties, for example, through lower contract costs or express concessions regarding other terms. *See id.*

The holdings of *Anderson* and its progeny rest on the careful balancing of the principles of contract and tort law. The law of contracts is based on the principle of freedom of contract. *Merten v. Nathan,* 108 Wis. 2d 205, 211, 321 N.W.2d 173, 177 (1982). The law protects justifiable expectations and the security of transactions. *Id.* These principles generally support the enforcement of an exculpatory clause. *Id.* at 212, 321 N.W.2d at 177. The law of torts is based on the principle of compensation of individuals for injuries sustained as the result of the unreasonable conduct of another. *Id.* at 211, 321 N.W.2d at 177. Tort law also serves the purpose of preventing future harm. *Id.* These tort law principles make a court

reluctant to allow the parties to shift by contract the burden of negligent conduct from the actor to the victim. *Id.* at 212, 321 N.W.2d at 177.

This balancing of principles evident in *Phillips* and *Merten* was not a factor in *Omernik.* That case was a contract cause of action based on the court's interpretation of the contractual terms. *Omernik,* 151 Wis. 2d at 303, 444 N.W.2d at 411. The court's responsibility was to interpret what was meant by the contract at issue and to allocate the risks as the contract intended. This deference to the contractual terms as allocating risks is not the rule as to tort causes of action, which instead balances the principles of contract and tort law. We therefore conclude that *Omernik* is distinguishable from the present case and that Thiel may not rely on the "as is" clause as a complete bar to the Grubes' claims of negligence and misrepresentation.

But while the "as is" clause is not a complete bar to these causes of action, its effect is to put the burden upon a buyer to determine the condition of the property purchased. *Id.* This shifting of the burden, with nothing more, protects a seller and his or her agent from claims premised upon nondisclosure. *See, e.g., Kaye v. Buehrle,* 457 N.E.2d 373, 383 (Ohio Ct. App. 1983). But we hold here that once the seller or his agent has made an *affirmative representation* about some aspect of the property, the buyer is entitled to rely upon that statement and expect full and fair disclosure of all material facts relating to that aspect of the property. In these situations, the exculpatory clause still may have evidentiary value for the purpose of showing that no representations were relied upon. *See Sheehy v. Lipton Indus., Inc.,* 507 N.E.2d 781, 784 (Mass. App. Ct. 1987).

Gordon Grube's affidavit states that when the Grubes asked about the wells, Thiel responded that "they were shallow wells which had just gone dry and that he (Thiel) would find out the depth of them and let [Grube] know." This representation is sufficient to entitle the Grubes to expect Thiel to fully and fairly disclose all aspects about the wells. This representation also shows that Thiel assumed the duty to investigate the condition of the wells. Furthermore, because the complaint states claims based on Thiel's affirmative statements that the land was "suitable for business, residential, recreation and family purposes," the "as is" clause likewise does not protect Thiel from misrepresentation claims based on those statements. While the "as is" clause could be used as evidence that the Grubes did not rely on these representations, that is a factual dispute which must be determined by a judge or jury at trial. *See Delmore v. American Family Mut. Ins. Co.,* 118 Wis. 2d 510, 512, 348 N.W.2d 151, 152 (1984).

Because Thiel still may have been burdened with the duties to investigate and to fully and fairly disclose, the Grubes' claims of negligence and misrepresentation through nondisclosure still stand. Based on the "as is" clause in the contract, we hold that Thiel did not assert a *prima facie* defense to these claims or to the claims of affirmative misrepresentation. We conclude that the circuit court erred in granting Thiel's motion for summary judgment on the claims of negligence, intentional misrepresentation, strict responsibility misrepresentation and negligent misrepresentation, and therefore reverse that part of the circuit court's order.

As to the remaining cause of action, the violation of sec. 100.18, Stats., the sales contract and Grube's affida-

vit do not provide any basis for concluding that Thiel asserted a *prima facie* defense. Therefore, we also reverse that portion of the trial court's order granting summary judgment to Thiel on this claim against him.

## SUMMARY JUDGMENT OF THE GRUBES AGAINST DAUN

The Grubes also appeal from the summary judgment dismissing their claims of breach of warranty, intentional misrepresentation, strict responsibility for misrepresentation, and negligent misrepresentation against Daun. The Grubes make three arguments that the trial court's grant of summary judgment was in error: (1) the "as is" clause does not shield Daun from misrepresentation claims; (2) Daun had a duty to disclose any defects as a subdivider/vendor and, through reckless disregard of the existence of the defects, made misrepresentations by silence; and (3) because Thiel was the agent of Daun, Daun is liable for any misrepresentations by Thiel.

We already have discussed that the "as is" clause is not a blanket defense to misrepresentation claims, although it may protect a seller from misrepresentation claims based on nondisclosure, as alleged here against Daun. But because we hold that Daun is liable as the principal for misrepresentations of the property's condition by his agent Thiel, summary judgment on the misrepresentation claims based on the actions of Thiel was error. We also hold that the Grubes will be allowed to present evidence for the intentional misrepresentation and strict responsibility for misrepresentation claims based on Daun's own representations about his knowledge and notice of property defects. Finally, we hold that the trial court properly granted summary judgment to Daun on the breach of warranty claim.

63

As discussed before, in summary judgment analysis we first look to the pleadings to determine whether claims have been stated and whether material issues of fact are presented. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 476. As it merits little discussion, we address the breach of warranty claim first. Although the Grubes appealed all of the grants of summary judgment by the trial court, they do not specifically contest the summary judgment on the breach of warranty claim. Arguments inadequately briefed need not be addressed by this court. *In re Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 (Ct. App. 1985).

The Grubes also appeal the grant of summary judgment dismissing their claim of intentional misrepresentation, strict responsibility for misrepresentation, and negligent misrepresentation against Daun. These claims are based on Daun's alleged nondisclosures and affirmative misrepresentations as well as the nondisclosures and misrepresentations of his agent, Thiel.

Under the above analysis regarding Thiel's conduct, we hold that the allegations of misrepresentation based on nondisclosure by Daun or his agent do not create material issues of fact when there is an "as is" clause in the sales contract. Therefore, the trial court did not err in granting Daun partial summary judgment on that portion of the Grubes' claim premised on Daun's or his agent's nondisclosures. However, the Grubes will not be prohibited in pursuing claims involving Daun's or Thiel's affirmative misrepresentations.

The complaint also alleges affirmative misrepresentations of fact by Daun relating to Daun's knowledge or notice of any structural or mechanical defects of the property. The complaint alleges that Daun knew or

should have known of these defects and that the representations thus were untrue. The Grubes allege they relied to their detriment on these representations when they purchased the property. These allegations support the three common elements of the three types of misrepresentation. *See Whipp,* 43 Wis. 2d at 169, 168 N.W.2d at 203.

In support of the intentional misrepresentation claim, the Grubes' complaint alleges that Daun intentionally misled them. Reading the complaint liberally, we conclude that the complaint states circumstances surrounding the misrepresentation which would support its assertion that Daun made the statement in order to defraud the Grubes and to induce them to act upon it to their pecuniary damage. These additional allegations support a claim for intentional misrepresentation. *See Lundin,* 124 Wis. 2d at 184, 368 N.W.2d at 680–81.

The Grube's complaint also states a claim for strict responsibility for misrepresentation. Liberally construed, it contains allegations that the statement was made in order to induce the Grubes to buy the property, that the Grubes paid Daun for the property, and that Daun made the statements based on his own personal knowledge—or lack thereof—in this case. *See Gauerke,* 112 Wis. 2d at 280, 332 N.W.2d at 808–09.

Further, the complaint alleges that Daun was negligent because he represented that he had no notice or knowledge of any defect, but failed to investigate the condition of the property. This additional element completes the Grubes' claim for negligent misrepresentation. *See Consolidated Papers,* 153 Wis. 2d at 593 n.2, 451 N.W.2d at 459. In sum, the Grubes have stated claims for intentional misrepresentation, strict responsibility

misrepresentation, and negligent misrepresentation based on affirmative statements made by Daun.

The complaint also alleges liability against Daun for misrepresentations by Daun's agent. It alleges that the agent made misrepresentations upon which they relied about the suitability of the property for business, residential, recreation and family purposes. It also alleges that the agent failed to disclose that the property was contaminated and failed to adequately investigate the property to discover the contamination. We already have held that claims based on these causes of action against Thiel—presumably the agent referred to in the complaint—survive summary judgment.

The longstanding rule in Wisconsin is that "[t]he seller is bound to know that the representations made by himself or his authorized agent to induce a sale are true." *First Nat'l Bank v. Scieszinski,* 25 Wis. 2d 569, 577, 131 N.W.2d 308, 313 (1964). A seller may be held liable for his or her agent's representations even if the seller had no knowledge the representations were made. *See Heal v. Stoll,* 176 Wis. 137, 146, 185 N.W. 242, 245 (1922). We already have held that claims for misrepresentation against Thiel as Daun's agent survive summary judgment. Accordingly, Daun also may be liable for Thiel's misrepresentations. Thus, the Grubes' complaint states claims against Daun for intentional and negligent misrepresentation and strict responsibility for misrepresentation through the representations of his agent, Thiel.

In summary judgment analysis, we next examine whether Daun's answer raises material issues of fact on all claims brought by the Grubes. Daun's answer admitted that Daun made representations that he had no knowledge of material structural or mechanical defects,

but denied that he knew of, should have known of, or was negligent in failing to discover such defects. The answer also stated Daun lacked knowledge as to any representations by his agent. An answer stating lack of knowledge is treated as a denial. Section 802.02(2), Stats. These statements sufficiently raise material issues of fact on all claims brought by the Grubes.

We now look at the supporting affidavits and other proof to determine if Daun has made a *prima facie* case for summary judgment under sec. 802.08(2), Stats., by asserting defenses which would defeat the claims stated by the Grubes. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477. The only proof which Daun has submitted in support of his summary judgment motion is the affidavit of his attorney and its supporting exhibits. The exhibits consist of excerpts from Gordon Grube's deposition and excerpts from two depositions of Louis Achter. After a careful examination of this proof, we conclude that these exhibits do not assert defenses which would defeat the claims stated by the Grubes.

Daun relies upon Achter's depositions to establish a defense to claims based on Daun's representations that he had no notice or knowledge of any defects. Achter's depositions merely establish that Achter did not tell Daun about the gasoline leak or any other problems with the property. Achter was only one source which Daun had available to him to find out about the problems; Daun could have had notice or knowledge of defects through his own investigation while he owned the property, or through other persons. Therefore, Achter's deposition does not assert a defense to the claims of the Grubes.

■ Gordon Grube's deposition establishes that Grube knew of the "as is" clause in the purchase agreement.

The deposition also establishes that Grube did nothing further to investigate the property after he was told by Thiel that there were no warranties or guarantees. As we previously discussed, if there is an "as is" clause but the seller's agent also makes an affirmative representation about the condition of the property, it is the duty of the seller or the seller's agent to investigate the condition of the property. Grube's deposition does not show any facts which would relieve Daun or Thiel of this duty. Because these exhibits do not assert defenses to defeat the Grubes' claims against Daun for misrepresentations by his agent Thiel, material issues of fact exist which would entitle the Grubes to a trial on these issues.

The alleged misrepresentation by Daun personally, on the other hand, related to Daun's *notice or knowledge* of defects in the property, not to the actual condition of the property. The "as is" clause put the Grubes on notice that defects might exist which were their responsibility to investigate. Daun's statement entitled the Grubes to rely upon the statement for its truth—that the seller did not actually have notice or knowledge of any defects—but this did not relieve the Grubes of their responsibility to determine the condition of the property. Because the statement only related to Daun's knowledge and not to the property's actual condition, it was still the Grubes' duty to investigate the property if they wished to make sure it was without defects. Because the Grubes assert no additional facts through affidavit or other proof which would place this duty upon Daun, the Grubes will be precluded from presenting evidence on their negligent misrepresentation claim based on Daun's affirmative misrepresentations.

The absence of a duty by Daun to investigate does not affect the Grubes' claims of intentional misrepresentation or strict responsibility for misrepresentation because breach of a duty is not an element of these claims. There is still an issue of material fact concerning whether Daun actually had knowledge or notice of any defects which would entitle the Grubes to a trial.

In sum, the Grubes' claims of intentional misrepresentation, strict responsibility for misrepresentation, and negligent misrepresentation survive. The Grubes' theories relating to misrepresentations based on Daun's or Thiel's nondisclosures and claims of negligent misrepresentation based on Daun's affirmative representation about his notice or knowledge of defects were properly dismissed. The Grubes will be allowed to pursue their theories of misrepresentation based on Thiel's affirmative misrepresentation about the condition of the property. Their claims relating to intentional misrepresentation and strict responsibility for misrepresentation based on Daun's representation about his knowledge or notice of defects survive.

## SUMMARY JUDGMENT OF THE GRUBES AGAINST ACHTER

The Grubes also appeal from the portion of the summary judgment which dismissed their claim of strict responsibility for misrepresentation against Louis Achter, the owner of the property when the land became contaminated. The trial court did not provide any reasoning for granting summary judgment to Achter.

The Grubes assert that the trial court erred for two reasons. First, a claim of strict responsibility for misrepresentation does not require there to be privity of contract between the Grubes and Achter. Second, Achter

69

should not be insulated from liability for nondisclosure of the leak when the buyer of the property fails to discover the leak and sells the property again. Because we hold that Achter did not have an economic interest in the sale of the land by Daun to the Grubes, the Grubes' complaint fails to state a claim of strict responsibility for misrepresentation against Achter. *See Gauerke,* 112 Wis. 2d at 280, 332 N.W.2d at 809.

As discussed in relation to Thiel, strict responsibility for misrepresentation has five elements. *See id.* at 277 n.3, 280, 332 N.W.2d at 807, 809. The Grubes state in their brief that the element requiring an allegation that the defendant had an economic interest in the transaction is met because Achter profited from the sale of the farm to Daun. However, that sale is not the focus of this case. The misrepresentations at issue occurred during the sale of the land by Daun to the Grubes. It is not alleged that Achter would have benefitted financially in any way by the Daun-Grube sale.

The Grubes nonetheless ask us to extend liability to the former owner. There is no support in Wisconsin law for the Grubes' position. The American Law Institute would limit liability for innocent misrepresentation (*i.e.*, strict responsibility for misrepresentation) to the parties to the sale. *See* Restatement (Second) of Torts sec. 552C, comment g on caveat (1976). Our supreme court has extended liability to the seller's real estate agent when the agent had an economic interest in the transaction. *Stevenson v. Barwineck,* 8 Wis. 2d 557, 564, 99 N.W.2d 690, 694 (1959). But more recently, the court declined to extend liability to a seller's attorney who was not in privity with the buyer, even though the attorney had an economic interest in the transaction. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 331–32, 401 N.W.2d 816, 827 (1987). In the Daun-Grube sale, Achter

had an even more remote connection to the transaction and the buyer than the attorney had in *Green Spring;* we cannot say that Achter should be subject to liability when his only connection to the transaction was as a prior owner.

The Grubes seem to want to stand in the shoes of Daun for Achter's failure to disclose the leak when Daun purchased the property. That argument is not theirs to make. Because the Grubes did not state a claim for strict responsibility for misrepresentations against Achter, we affirm the trial court's order granting summary judgment to Achter on that claim.

## SUMMARY JUDGMENT OF ACHTER AGAINST SECURA

Secura appeals the trial court's denial of summary judgment upon Secura's claims. Secura argues that Achter's policy does not include coverage for contractual claims or for negligent and intentional misrepresentation. Furthermore, Secura contends that the policy exclusion applies which denies coverage when damage is to the insured's own property. Secura argues that the damages claimed by the Grubes do not fall within the Secura policy. As a result, the argument continues, Secura is not required to defend Achter in the Grube lawsuit; therefore, Secura's motion for summary judgment should have been granted. We affirm the trial court's ruling and further hold that because Secura did not contest its coverage in court and breached its duty to defend Achter, Secura has waived any challenges to coverage and must indemnify Achter up to the limits of his policy.

71

Determining if an insurance company has a duty to defend is a question of law reviewed *de novo* and without deference to the trial court. *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580, 427 N.W.2d 427, 429 (Ct. App. 1988). In Wisconsin, the duty of an insurer to provide a defense to its insured is determined by the complaint and not by extrinsic evidence. *Elliott v. Donahue*, 163 Wis. 2d 1059, 1065, 473 N.W.2d 155, 158 (Ct. App. 1991), *rev'd on other grounds*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992). If there are allegations in the complaint which, if proven, would be covered, the insurer has a duty to defend. *Id.*

The actions alleged in the complaint naming Achter include: breach of duty to keep land environmentally safe, negligence, misrepresentation, strict responsibility for misrepresentation,[4] and rescission. Misrepresentation and breach of contract claims may not be covered under Achter's farmowners policy according to *Qualman v. Bruckmoser*, 163 Wis. 2d 361, 365–67, 471 N.W.2d 282, 284–85 (Ct. App. 1991). However, the allegations of negligence, which would be covered under Achter's policy, are sufficient to compel Secura to provide Achter with a defense.

The damages alleged also come within the scope of the policy. Paragraph 19 of the third amended complaint alleges that "because the Defendant, Louis Achter, negligently allowed and suffered the gasoline tank to leak, the above described real estate has become contaminated with gasoline and hydrocarbons." Property damage is covered under the policy, and damage to the insured's

---

[4] The trial court granted Achter's motion for summary judgment on the strict responsibility claim, observing that the facts do not provide a basis for the claim. We affirm this order, as discussed in the previous section.

property due to an alleged negligent act was claimed. Therefore, the damages to the land would have been covered under Achter's policy, and Secura should have provided Achter with a defense.

The insurance company must defend the action when some of the allegations in the complaint fall within the policy coverage because "apportionment of responsibility for the defense is neither practical nor desirable." *Engsberg v. Town of Milford*, 597 F. Supp. 251, 256 (W.D. Wis. 1984). Negligence causing property damage was alleged and is covered under Achter's policy. We hold that Secura must defend the entire action, although certain allegations may fall outside the scope of Achter's coverage. *See Elliott*, 163 Wis. 2d at 1065, 473 N.W.2d at 158.

There are several reasons for our holding. First, it is impossible to determine upon which claim the plaintiff may recover until the action is completed. Second, "[i]t assures that the insured will have a coherent, coordinated defense aimed at defeating all of the claims, rather than separate defenses that might work at cross purposes, since the insurer will be interested primarily in defeating the covered claims." *First Newton Nat'l Bank v. General Casualty Co.*, 426 N.W.2d 618, 630 (Iowa 1988). Third, insurance contracts are contracts of adhesion, allowing the insured little choice in adding, eliminating or writing standard provisions, such as the insurer's duty to defend. *See Freeman v. Commonwealth Life Ins. Co.*, 271 N.E.2d 177, 181 (Ind. Ct. App. 1971). These justifications are consistent with Wisconsin's rule that questions about coverage must be resolved in favor of the insured. *See Professional Office Bldgs.*, 145 Wis. 2d at 583, 427 N.W.2d at 431.

Secura also argues that it did not have a duty to defend because the claims alleged fall within exclusions of the policy. We hold that under *Professional Office Bldgs.*, Secura is estopped from raising any challenges to coverage; it must both defend and indemnify Achter because Secura denied coverage outright. *See id.* at 584–85, 427 N.W.2d at 431.[5]

In *Professional Office Bldgs.*, the insured was sued by a third party in Mississippi for compensatory and punitive damages resulting from pilot negligence in an airplane accident. The insurer refused to defend the insured in that action on the grounds that the insured was using his property in a way which was excluded by the policy. The insurer did not seek a court determination of the coverage issue. Judgment was entered against the insured in the Mississippi action.

The insured then sued its insurer in Wisconsin, seeking coverage for its liability to the third party. This court held that the insurer had breached its duty to defend the Mississippi action because the nature of the claim against the insured was one for the liability the insurer had insured against. *Id.* at 583, 427 N.W.2d at 430–31. This court then held that the insurer was estopped from challenging coverage in the Wisconsin action and would be liable to the insured up to the policy limits. *Id.* at 584–85, 586, 427 N.W.2d. at 431. We noted that this harsh result could have been avoided if the insurer had sought resolution of the coverage issue by a court, rather than determining coverage for itself by refusing to defend. *Id.* at 585, 427 N.W.2d at 431.

The issue in the instant case—whether an insurer who breached its duty to defend can later contest cover-

[5] *See also* 7C C.J. APPLEMAN, INSURANCE LAW AND PRACTICE 4689 at 214 (1979).

age—is identical to the issue in *Professional Office Bldgs.* Therefore, that holding must control and Secura is liable to Achter for the costs of defending the suit, the amount recovered from Achter either by judgment or settlement, and any additional damages caused by Secura's breach of contract.

Rather than raising the issue in court, an insurer cannot deliberately reach its own conclusion on coverage and then maintain that a clause in the policy would have excused it from indemnifying had the coverage issue correctly been decided by a court originally. There are several procedures insurers can use to raise the coverage issue and thus retain their right to challenge coverage. The insurer and the insured could enter into a nonwaiver agreement in which the insurer would agree to defend, and the insured would acknowledge the right of the insurer to contest coverage. However, the insured is not obligated to sign such an agreement. Alternatively, the insurer could request a bifurcated trial or a declaratory judgment so that the coverage issue would be addressed separately by a court.[6] In addition, the insurer could give the insured notice of intent to reserve rights. When a reservation of rights is made, the insured can pursue his own defense not subject to the control of the insurer, but the insurer still would be liable for legal fees incurred.

We also note that the policy of judicial economy is a reason behind requiring insurers either to provide a defense immediately or to use alternate methods to reduce the costs of providing a defense until the coverage

---

[6] Section 803.04(2)(b), Stats., allows bifurcation of the issues, and sec. 806.04, Stats., permits insurers to seek a declaratory judgment. *See also Elliott v. Donahue,* 163 Wis. 2d 1059, 1066 n.3, 473 N.W.2d 155, 159 (Ct. App. 1991), *rev'd on other grounds,* 169 Wis. 2d 310, 485 N.W.2d 403 (1992).

issue is decided. If insurers have a duty to defend from the time the suit is initiated, then these insurers will be inclined to settle; thus, the strain on the courts is reduced.

As a final matter, we hold that Secura has lost its contractual right to control Achter's defense, as described in the policy, by inappropriately refusing to defend. *See Capitol Indem. Corp. v. St. Paul Fire & Marine Ins. Co.*, 357 F. Supp. 399, 413 (W.D. Wis. 1972).[7] The duty to defend and the insurer's right to control the defense are contractual obligations "in line with the insured's reasonable expectation of protection." *Barber v. Nylund*, 158 Wis. 2d 192, 196, 461 N.W.2d 809, 811 (Ct. App. 1990). Refusing to defend is a breach of the insurer's obligation under the contract. As a result, the insured is not bound to his contractual duty to allow the insurer to control the defense. *See* Restatement (Second) of Contracts sec. 237 and comment a (1979). In addition, to allow an insurer to step in and control the insured's defense after originally refusing to defend would compromise the success of the insured's defense and would waste the judicial resources which already had been used to resolve the case.

We conclude that Secura, by not contesting coverage in court and by breaching its duty to defend Achter, is estopped from raising any challenges to coverage and must indemnify Achter up to the limits of his policy.

Costs are denied to all parties.

---

[7] *See also* 7C C.J. APPLEMAN, INSURANCE LAW AND PRACTICE 4691 at 238-39 (1979).

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.