Texas Carolyn BUFKIN, Plaintiff-Appellant,

v.

MILWAUKEE BOARD OF SCHOOL DIRECTORS, Jeanette
Mitchell, President, John Petersburs, Secretary-Busi-
ness Manager, Robert S. Peterkin, Superintendent,
and Daniel Drake, Community Superintendent,
Defendants-Respondents.†

Court of Appeals

*No. 92–2303. Oral argument June 24, 1993.—Decided
September 8, 1993.*

(Also reported in 507 N.W.2d 571.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Trisha R. Stewart* of *Stewart Law Offices*, of Milwaukee, with oral argument by *Trisha R. Stewart* and *Arthur Heitzer*, amicus, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Grant F. Langley*, city attorney, with *Mary M. Kuhnmuench*, assistant city attorney, of Milwaukee, with oral argument by *Mary M. Kuhnmuench*.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J. Texas Carolyn Bufkin appeals from a summary judgment which confirmed her discharge and preclusion of tenure as the principal of North Division High School in Milwaukee. Bufkin alleged that the manner in which she was discharged deprived her of her rights to notice and hearing under the Milwaukee Board of School Directors (the Board) rules, her union contract, and the Fourteenth Amendment to the United States Constitution. The trial court determined upon undisputed facts of record that Bufkin had not obtained tenure and that the Board had lawfully discharged her. The issue presented is whether a Milwaukee public school principal can be refused tenured status despite the fact that the employee has completed the probationary period as defined in Board Rule 3.12 and state statute sec. 119.42(1m), Stats. Bufkin argues that the trial court erroneously granted the Board's motion for summary judgment on this issue. We agree.

The following relevant facts are undisputed. On July 30, 1987, after recruiting Bufkin from a Michigan high school where she had acted as a principal for four years, the Board appointed her to the position of high school principal. Bufkin commenced work in August of 1987 at North Division High School. Bufkin knew that she was subject to a three-year probationary period and that during that period she would be reappointed on a semester basis conditioned upon satisfactory performance. The Board reappointed Bufkin to second, third, fourth and fifth probationary semesters.

On December 15, 1989, during her fifth probationary semester, a meeting was held between Bufkin, Robert S. Peterkin, and Daniel D. Drake. At the time, Peterkin was Superintendent of the Milwaukee Public Schools,[1] and Drake, Bufkin's immediate supervisor, was Community Superintendent for Service Delivery Area III.[2] At the meeting, the parties discussed various concerns about North Division High School.

On February 20, 1990, and apparently after several meetings, Drake sent a letter to Bufkin indicating that her performance was unsatisfactory.[3] On that same date, Drake sent Peterkin a letter indicating his opinion that Bufkin should not be given tenure. On March 2, Drake sent letters to Bufkin and Peterkin indicating that Bufkin's mid-year evaluation had been completed and that he recommended that Bufkin not be granted tenure.

---

[1] Peterkin served as Superintendent from August 1988 through June 1991.

[2] Drake served from June 1989 through June 1991.

[3] The letter was apparently a finalization of an evaluation conducted in the fall of 1989.

In a form letter[4] dated March 15, Peterkin informed Bufkin that he had nominated and the Board had reappointed her to a sixth and final probationary semester. The letter further explained that Bufkin must obtain a satisfactory evaluation and Peterkin's nomination for reappointment in order to complete the three year probationary period. The letter also included the following sentence: "Please be further advised that an unsatisfactory evaluation and the act of non-reappointment by the Superintendent accomplishes nonrenewal of a probationary employee with no further action required by the Board."

On June 18, following further meetings and correspondence with Bufkin, Peterkin advised Bufkin:

> This letter confirms my decision not to reappoint you as principal of North Division High School. As you may know, the Milwaukee Board of School Directors has taken the position that the act of nonreappointment of a probationary employee, by the superintendent, serves to terminate the probationary employee, with no further action necessary by the Board.
>
> . . . .
>
> . . . . Accordingly, I am terminating your service as a probationary employee in the Milwaukee Public Schools.

Bufkin carried out her duties as principal, and was paid, through the end of the semester, June 22. On June 25, Drake sent Bufkin a letter stating: "As you know, the school year for principals ended last Friday, June 22, 1990. As your employment with the school

---

[4] The form letter sent to Bufkin had been approved by the Board on February 28, 1990, and was sent to all probationary employees being appointed by the Board to a sixth semester.

district has been terminated, you should make arrangements to meet with . . . the Director of Human Resource Management for the Milwaukee Public Schools."

On June 27, 1990, Peterkin informed the Board of his decision to not nominate Bufkin for reappointment. Peterkin purportedly provided Bufkin's name to the Board for "informational purposes only," and reiterated to the Board that "the act of nonreappointment by the Superintendent of a probationary employee serves to terminate that probationary employee's employment in the district with no further action required by the Board."

In its motion for summary judgment, the Board argued that Bufkin was a probationary employee who had not yet achieved tenured status, and, therefore, that she was not entitled to any of the procedural protections she claimed. The trial court granted the Board's motion for summary judgment.

On review to an order granting summary judgment, we follow the same analysis as the trial court. *Grube v. Daun,* 173 Wis. 2d 30, 50, 496 N.W.2d 106, 113 (Ct. App. 1992). The procedure for summary judgment is comprehensively set forth in *Grube* and need not be restated here. *See id.* at 50–51, 496 N.W.2d at 113. We grant summary judgment "only where the movant demonstrates a right to a judgment with such clarity as to leave no room for controversy." *Id.* at 51, 496 N.W.2d at 113. In addition, this case involves the application of statutes to an undisputed set of facts, which presents this court with a legal issue that we decide without deference to the decision of the trial court. *Manor v. Hanson,* 123 Wis. 2d 524, 533, 368 N.W.2d 41, 45 (1985).

Section 119.42(1m), Stats., sets forth teachers'[5] tenure rights in the Milwaukee Public Schools. It provides in part:

> The appointment of a teacher in a 1st class school district shall be probationary. After successful probation by completing 3 years of continuous service, the appointment shall be permanent during efficiency and good behavior.

Section 119.18(1), Stats., vests the Board with authority to "adopt and modify or repeal rules for its own government and for the organization, discipline and management" of the schools. In accordance with that authority, the Board enacted Rule 3.12, which provides in part:

> (1) **PROBATIONARY SERVICE.** The appointment of any teacher, assistant principal or principal shall be effected only upon nomination by the superintendent, recommendation by the committee on personnel and negotiations and approval thereof by the board. All appointments prior to acquisition of tenure shall be on a probationary basis for one semester only, provided, however, that before acquiring permanent tenure each teacher, assistant principal or principal shall have served 6 semesters on probation (exclusive of any time served continuously or otherwise as a substitute teacher).

> (2) **PERMANENT SERVICE.** Upon completion of 3 years of probationary service, as provided herein, a teacher, assistant principal or principal shall be deemed permanently employed within the limits of the compulsory retirement age, during efficiency

---

[5] "Teacher," as used in this statute includes school principals. *See* secs. 119.42(1) and 40.02(55), Stats.

and good behavior, without further action by the board.

The Board argued that its interpretation of these rules was that to obtain tenured status, a teacher must obtain a satisfactory evaluation during the sixth probationary semester, and be nominated and appointed to the tenured term. In accordance with this "interpretation," the Board approved the form letter to Bufkin and other sixth semester probationary employees, which explained that "non-reappointment" in the sixth semester would result in non-renewal of the employee without any further action of the Board. Thus, the Board argued, because Bufkin was not nominated for reappointment, and was sent the "termination" letter before the close of the semester, she never completed her three-year,[6] or six-semester, probationary period, and never obtained tenure.

We reject the Board's arguments. The plain language of sec. 119.42(1m), Stats., requires that "[a]fter successful probation . . . the appointment *shall be permanent*." (Emphasis added.) That same statute equates "successful probation" with "completing 3 years of continuous service." Consistent with that statute, the Board enacted Rule 3.12(2), which provides that at the "completion of 3 years of probationary service . . . [a] principal *shall be deemed permanently employed . . . without further action by the Board*." (Emphasis added.) In Rule 3.12(1), the Board further defined the probationary period by stating that the employee will be appointed on a semester basis, and that an employee must "have served 6 semesters on probation" before tenure is acquired.

---

[6] Bufkin's employment contract defined her work year as 200 days.

Neither the statute, nor the rules, condition permanent employment upon any further review, renewal or reappointment by either the superintendent or the Board during the final probationary semester.[7] In fact, the mandatory language contained in both sec. 119.42(1m) and Rule 3.12(2) flies squarely in the face of the Board's subsequent "interpretation" requiring a final appointment to tenured status. We reject the Board's interpretation because it is inconsistent with the plain language of the statute and rule.

Almost 70 years ago, the Milwaukee Public School Board attempted to assert the same argument that it now advances against Bufkin. *See State ex rel. Nyberg v. Board of School Directors*, 190 Wis. 570, 209 N.W. 683 (1926), *overruled on other grounds, State ex rel. Wasilewski v. Board of School Directors*, 14 Wis. 2d 243, 111 N.W.2d 198 (1961). In *Nyberg*, the Board argued, under a statute much like sec. 119.42, Stats., that a teacher did not obtain tenure at the conclusion of the probationary period unless the Board affirmatively declared that the teacher had successfully completed the probationary period. *Id.* at 574–75, 209 N.W. at 685.[8] In rejecting the Board's argument, the court held,

---

[7] In contrast to sec. 119.42(1m), Stats., sec. 118.23(2), Stats., which applies to "populous counties," provides:

> All principals shall be employed on probation, but after continuous and successful probation for 3 years *and the gaining of a 4th contract* in the same school system or school, their employment shall be permanent . . . .

(Emphasis added.) Section 118.23(2) clearly requires further action following the probationary period before a principal obtains tenure.

[8] The statute that was interpreted in *Nyberg* provided:

> All elections or appointments of teachers by the board of school directors or other managing bodies in cities of the first class shall

"a teacher having served a successful probation period becomes, by virtue of such services and the statute, permanently employed, and that no precedent declaration or determination by the school board to the effect that such service is successful or satisfactory is required . . . ." *Id.* at 574, 209 N.W. at 685.

Nonetheless, the Board now argues that nothing prohibits the Board from delegating to the Superintendent the right to determine that an employee has *not* successfully completed the probationary period. We disagree. As explained above, the plain language of the statute and the Board's own rules indicate that upon completion of three years, or six semesters of probationary period, the appointment "shall be permanent," and the statute clearly equates "successful probation" with "completing 3 years of continuous service." *See* sec. 119.42(1m), Stats., and Rule 3.12(2).

The Board argues that rejection of its interpretation would, in effect, shorten the probationary period to two and one-half years, or five semesters. This is not the case. It is true, however, that the sixth probationary semester is unique. The parties agree that prior to the sixth semester, all that would have been required to terminate Bufkin's employment was to not appoint her to the subsequent semester.[9] Once she had been

---

be on probation, and after a successful probation for four years, the election or appointment shall be permanent . . . .

*Id.* at 573, 209 N.W. at 685.

[9] Rule 3.45 provides in part:

Probationary personnel serving the first 3 years after initial appointment shall be evaluated in December and May of each year preceding nomination for semiannual appointments. . . . If any probationary person fails of appointment in any semiannual appointments of probationary personnel, such person's service for the board shall be automatically terminated.

appointed to that sixth and final probationary semester, however, the option to simply not reappoint her did not exist. Nonetheless, prior to the completion of the sixth semester, the employee is still probationary and can be discharged without being afforded the full range of protections granted to tenured employees.[10]

The Board contends that it did discharge Bufkin, as evidenced by Peterkin's letter dated June 18, 1990. We disagree. Peterkin's letter to Bufkin, despite the fact that it purported to be a letter of termination, did not act as an outright termination of employment. Rather, it stated that Bufkin was not going to be reappointed and that "act of nonreappointment . . . serves to terminate the probationary employee." The letter simply restated the Board's "interpretation" of the relevant statutes and rules—an interpretation that we have already determined was erroneous. Therefore, we conclude that the letter did not effect Bufkin's termination.[11]

---

[10] Section 119.42(1m) provides in part:

A teacher who has a permanent appointment shall not be discharged, except for cause upon written charges. After 10 days written notice to the teacher of the charges and upon the teacher's written request, the charges shall be investigated, heard, and determined by the board. The action of the board on the matter shall be final.

Rule 3.47 provides the same protection.

[11] Because we conclude that Bufkin was not dismissed from her employment, we need not decide the issue of whether the superintendent had the authority to dismiss a probationary employee without further action by the Board. The Board, at oral argument, argued that the Superintendent had the authority to dismiss any probationary employee without further action by the Board, but was unable to offer conclusive support for that position either in the form of a state statute or Board rule. We note that the following Board rules that deal with the issue of

238

██

In conclusion, sec. 119.42(1m), Stats., and Rule 3.12 are unambiguous. The statute and rule clearly require that a probationer gains permanent status upon the completion of the sixth semester. The Board's interpretation of the statute and rule, which would require further action by the Board before granting tenured status, is contrary to the mandate of both sec. 119.42(1m) and Rule 3.12. Finally, Peterkin's letter to Bufkin, informing her of that erroneous interpretation was not a letter of termination. Although the pleadings and affidavits create no material issue of fact on the issue of whether Bufkin had obtained tenure, the Board was not entitled to judgment as a matter of law because the facts show that Bufkin had obtained tenure when she completed her sixth probationary semester. Thus, we reverse the trial court's grant of summary judgment. In its pleadings, the Board admitted that it did not terminate Bufkin in accordance with the procedures set out for terminated tenured employees. Thus, we order the trial court to enter summary judgment in favor of Bufkin on the issue of liability. *See*

discharge, Rule 3.46, which appears to apply to all teachers whether probationary or tenured, and Rule 3.47, which applies specifically to tenured teachers. Those rules provide:

> 3.46 **Suspension.** The Superintendent may, in an emergency, temporarily suspend a certificated employe, reporting his action and reasons therefor to the committee on personnel and negotiations at its next regular meeting. That committee may recommend the discharge of such employe to the board.

> 3.47 **Discharges.** No certificated employe who has become permanently employed . . . shall be discharged except for cause upon written charges . . . .

These rules do not support the Board's conclusion that the superintendent can discharge a probationary employee without action by the Board.

sec. 802.08(6), Stats. (summary judgment may be entered for non-moving party where that party is entitled to summary judgment); and sec. 802.08(2), Stats. (summary judgment may be entered on the issue of liability alone).

*By the Court.*—Judgment reversed and cause remanded.