Leonard H. Jacob and Janet Jacob, Plaintiffs-Respondents-Cross Appellants-Cross Respondents, †

v.

West Bend Mutual Insurance Company, Defendant-Appellant-Cross Respondent,

Russo Builders and GRE Insurance Group, Defendants-Cross Respondents-Cross Appellants,††

Limbach Construction Company, Defendant.

Court of Appeals

*No. 95–0593. Submitted on briefs May 8, 1996.—Decided July 24, 1996.*

(Also reported in 553 N.W.2d 800.)

†Petition to review filed.
††Petition to cross review filed.

524

525

On behalf of the defendant-appellant-cross respondent, the cause was submitted on the briefs of *Neal C. Schellinger* and *Philip J. Tallmadge* of *Schellinger & Associates* of Brookfield.

On behalf of the plaintiffs-respondents-cross appellants-cross respondents, the cause was submitted on the briefs of *Thomas L. Smallwood*, of *Borgelt, Powell, Peterson & Frauen S.C.* of Milwaukee.

On behalf of the defendants-cross respondents-cross appellants, the cause was submitted on the briefs of *Thomas R. Schrimpf* and *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. This case brings us an appeal and two separate cross-appeals. The legal disputes result from the brick masonry work performed on a new home constructed for Leonard H. and Janet Jacob. Russo Builders was the general contractor, Michael Limbach Construction Company was the masonry subcontractor, and West Bend Mutual Insurance Company was Limbach's insurer.

On the appeal, West Bend argues that the trial court erred by ruling that West Bend breached its duty to defend Limbach Construction. We agree. We reverse this portion of the judgment and remand for the trial court to address West Bend's coverage defenses.

On one cross-appeal, the Jacobs argue that the trial court improperly eliminated the jury's damage awards for tuck-pointing the defective masonry and for diminution in value of the structure. Instead, the court entered judgment for the stipulated cost of replacing the defectively installed brick. We reject the Jacobs' argument. We affirm this portion of the judgment.

On the other cross-appeal, Russo argues that the trial court improperly rejected its proposed jury instruction regarding the liability of a general contractor vis-a-vis an independent subcontractor. We disagree. We hold that the court correctly instructed the jury. We affirm the judgment as entered against Russo.

## FACTS AND TRIAL COURT PROCEEDINGS

In March 1990, the Jacobs contracted with Russo, a general contractor, calling for Russo to construct a home with a brick veneer exterior in the city of Brookfield, Wisconsin. Russo, in turn, subcontracted with Michael J. Limbach to perform the masonry work on the house. Limbach operated his business as a sole proprietorship under the name of Michael Limbach Construction Company. West Bend had issued a Standard Contractors Businessowners Policy to Limbach, identifying the insured as "Michael Limbach DBA Michael Limbach Construction."

Shortly after their home was completed in November 1990, the Jacobs began experiencing problems with rainwater leaking into the home through the masonry of every exterior wall. A severe rainfall in April 1993 caused flooding in the Jacobs' dining room and back hallway, and the ceilings bulged with water. They eventually had to have the ceilings punctured to allow the water to drain.

Michael Limbach died in May 1993, and a petition for the administration of his estate was filed in the Washington County Circuit Court on July 29, 1993. The deadline for filing claims was November 3, 1993.

The Jacobs commenced this action in the circuit court of Waukesha county on November 23, 1993. As defendants they named Russo, Limbach Construction, and West Bend.[1] The complaint alleged causes of action for breach of contract, breach of express and implied warranties, negligence, strict liability and misrepresentation. After examining the complaint, West Bend determined that its policy did not cover the Jacobs' claim against Limbach. West Bend wrote to Limbach Construction advising of this determination and reserving its denial of coverage rights under the policy. However, West Bend also authorized Limbach Construction to hire its own lawyer and promised that it would pay the fees and related costs.

In response to this letter, West Bend received a telephone call from Betty Limbach, Michael Limbach's surviving widow. Betty was also the personal representative of Michael's estate. Betty advised West Bend that Attorney Carol Beverly was representing her and the estate. Beverly then wrote to West Bend, advising that she had been retained by Betty and asking West Bend to confirm that it would pay for the defense of the Jacobs' action. West Bend responded to Beverly, confirming that it would pay the attorney's fees and costs to Limbach Construction in defending the action. West Bend again reserved its rights to defend on the coverage issue.

On January 20, 1994, the Jacobs filed a claim against Michael's estate in the Washington county pro-

---

[1] The Jacobs also named Russo's insurer as a defendant.

bate action. As the basis for the claim, they presented a copy of the complaint in the Waukesha county action. Beverly filed an objection to the claim, contending that it did not state a claim against Michael's estate because the complaint did not name Michael Limbach personally as a defendant.[2]

The probate court agreed with Beverly's objection and dismissed the Jacobs' claim.[3] The correctness of this ruling is not before us on appeal. However, it is historically important because Beverly relied on this ruling, in part, in developing her strategy in the Jacobs' action against Limbach Construction. Relying on this favorable ruling from the probate court, and believing that any judgment in this case against Limbach Construction posed no jeopardy to Michael's estate or to the beneficiaries or heirs of the estate, Beverly made the tactical decision to not actively defend in this action. She therefore notified West Bend that she would not be filing an answer on behalf of Limbach Construction and that Limbach Construction would not actively defend the Jacobs' action.

Russo then asked the trial court to stay further proceedings and to refer the matter to arbitration pursuant to an arbitration provision in the construction agreement with the Jacobs. On March 14, 1994, Waukesha County Circuit Judge Robert G. Mawdsley granted this request, and the arbitration hearing was scheduled for August 24, 1994. On October 21, three

---

[2] Beverly also objected on the grounds that the claim was not timely filed.

[3] Washington County Circuit Judge Richard T. Becker issued this ruling. Because Judge Becker ruled that the Waukesha county complaint was insufficient to state a claim against Michael Limbach, the judge did not address the timeliness of the claim.

531

days before the arbitration panel issued its decision, and four days before the jury trial was scheduled to commence, Judge Mawdsley entered an order that the arbitration decision be "produced and entered into the record binding the [Jacobs] and Russo Builders to the determination made therein as it relates to repair or replacement of the brick and mortar." On October 24, the arbitration panel issued its decision directing Russo to repair the brick walls of the Jacob home by tuck-pointing the joints.[4]

Despite the arbitration panel's decision and Judge Mawdsley's order making the decision binding as to the Jacobs and Russo, the matter nonetheless proceeded to jury trial on October 25, 1994. The trial of the case was assigned to Reserve Judge David C. Willis, and all of the rulings which we review on this appeal were made by Judge Willis. Although the trial concerned itself with certain other incidental damage claims by the Jacobs, the principal issues at the trial were: (1) whether the masonry work was defective; and, if so, (2) what needed to be done to correct the problem. These were the same matters which had just been addressed by the arbitration proceedings and decided by the arbitration award.

As noted previously, Limbach Construction did not participate in the trial. As a result, the Jacobs' proofs of

---

[4] The decision of the arbitration panel stated:

Builder shall . . . tuckpoint all joints, filling with Type N mortar to full depth of brick where possible. Builder shall further install proper flashing and weep holes to bring to Code. Builder is to warrant the adequacy of the repair work and is solely responsible for performance of the repairs for a period of one year from date of completion of the above work. This is the minimum work required of the Builder and if this work fails to correct the water leakage into the home, then the Builder shall perform such additional work as necessary to assure that the masonry does not leak.

negligence against Limbach Construction stood uncontested. West Bend appeared and pursued its coverage defense. Russo appeared and defended on the merits.

The Jacobs presented expert testimony in support of their claims against Limbach Construction and Russo. This testimony opined that the problem could be corrected by tuck-pointing the masonry, but that this procedure still produced a diminution in value of the residence. In addition, at the close of evidence, the parties stipulated that the cost of entirely replacing the brick veneer, instead of repairing it by tuck-pointing, would be $102,470. No such stipulation was forthcoming on the question of tuck-pointing and the concomitant diminution in value. Therefore, those questions were included on the special verdict, along with seven other questions regarding the Jacobs' other consequential damages.[5]

In response to the Jacobs' negligence theory, Russo requested jury instructions to the effect that a general contractor is not liable for the torts of an independent contractor. *See, e.g.,* WIS J I—CIVIL 1022.6. The trial court rejected these proposed instructions.

The jury returned a verdict finding Russo and Limbach Construction each fifty percent causally neg-

---

[5] These additional questions covered interior water damage, landscape repair, driveway, sidewalk and patio damage, relocation expenses, lost opportunity to refinance at a more favorable interest rate, loss of value due to tuck-pointing, and loss of use and enjoyment of the home. The trial court answered two additional questions regarding the expert fees and expenses and the cost of additional temporary repairs.

West Bend proposed certain questions which it believed would bear upon the coverage question. However, the trial court did not submit these questions, and that ruling is not challenged on appeal.

ligent in the construction of the Jacobs' home. In addition to the consequential damage awards, the jury awarded the Jacobs $110,500 for the cost of tuck-pointing and $135,000 for the diminution in the value of the structure due to the tuck-pointing. Based on these findings, the trial court entered a default judgment against Limbach Construction.[6]

Posttrial, West Bend moved for a directed verdict on its coverage defense. West Bend argued that the policy issued to Michael Limbach was not a performance bond, but rather, a contractor's businessowners policy. West Bend contended that its policy covered damage to other property or to third parties for defective workmanship, but not for the cost of correcting or replacing the defective workmanship itself. *See, e.g., St. John's v. Continental Casualty Co.*, 147 Wis. 2d 764, 786-87, 434 N.W.2d 112, 121 (Ct. App. 1988).

However, the trial court never reached West Bend's coverage argument. Instead, in response to the Jacobs' and Russo's motions, the court ruled that West Bend had breached its duty to defend Limbach Construction. The court reasoned that West Bend did not afford Limbach Construction an effective defense because "it hired attorneys who permitted default judgment to be entered against Limbach," and West Bend "agreed with the strategy of [Beverly] not to provide a defense" to its insured. On this ground, the trial court bound West Bend to the verdict.

---

[6] Since the question of Limbach Construction's alleged negligence was submitted to the jury, it appears that the default judgment may have been granted pursuant to § 806.02(5), STATS., which provides, "If proof of any fact is necessary for the court to render [default] judgment, the court shall receive the proof."

Russo also filed a postverdict motion asking the trial court to eliminate the jury's damage awards of $110,500 for tuck-pointing and $135,000 for diminution in value and to substitute therefore the $102,470 stipulated cost of completely replacing the brick veneer. The court granted this request. The court reasoned that since the cost of replacing the brick ($102,470) was less than the tuck-pointing award ($110,500) and since the replacement procedure produced no concomitant diminution in value, a judgment in favor of the Jacobs for the replacement cost of the brick fully compensated them for their loss.

West Bend appeals the trial court's duty to defend ruling. The Jacobs cross-appeal the court's elimination of the tuck-pointing and diminution of value damage awards. Russo cross-appeals the trial court's rejection of its proposed jury instructions. We will discuss additional facts as they apply to the appellate issues.

DISCUSSION

### 1. West Bend's Appeal

Duty to Defend

West Bend argues that the trial court erred by ruling that West Bend waived its coverage defenses by failing to fulfill its duty to defend Limbach Construction. Whether West Bend satisfied its duty to defend is a question of law which we review de novo. *Cf. Grube v. Daun,* 173 Wis. 2d 30, 72, 496 N.W.2d 106, 122 (Ct. App. 1992); *see also Barber v. Nylund,* 158 Wis. 2d 192, 195, 461 N.W.2d 809, 811 (Ct. App. 1990).

An insurance company's duty to defend is solely dependent on the allegations in the complaint. *Qualman v. Bruckmoser,* 163 Wis. 2d 361, 364, 471 N.W.2d 282, 284 (Ct. App. 1991). Before a duty to defend arises, there must be allegations in the complaint which would fall within coverage afforded under the policy. *Id.* at 365, 471 N.W.2d at 284.

We note at the outset that the issue in this case is not whether West Bend had a duty to defend Limbach Construction. It clearly did, and West Bend does not dispute that the four corners of the Jacobs' complaint triggered its duty to defend.

Rather, the issue is whether West Bend properly discharged that duty. *Grube* expressly sets out how an insurer discharges this duty. An insurer has several options available when it wants to raise a coverage issue and retain its right to challenge coverage. *Grube,* 173 Wis. 2d at 75, 496 N.W.2d at 123. One option requires the insurer to request a bifurcated trial on the issues of coverage and liability or a declaratory judgment on the coverage issue. *Id.; see Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 836, 501 N.W.2d 1, 6 (1993).

Another option requires the insurer to give the insured notice of the insurer's intent to reserve its coverage rights. *Grube,* 173 Wis. 2d at 75, 496 N.W.2d at 123. This allows the insured the opportunity to a defense not subject to the control of the insurer although the insurer remains liable for the legal fees incurred. *Id.*

The facts of this case clearly reveal that West Bend exercised this second option. West Bend wrote a letter to Limbach Construction notifying it that West Bend denied coverage, reserved its right to defend on that

basis, and authorized Limbach Construction to select its own attorney whose fees West Bend would pay.

The trial court seems to have reasoned that because Beverly, the lawyer selected by Betty Limbach, employed a strategy which left Limbach Construction undefended in this case, that strategy must be visited upon West Bend. We are not required to decide in this case whether the default judgment against "Limbach Construction Company," a legal nonentity, is of any enforceable effect against the estate of Michael Limbach, his heirs or the beneficiaries of his estate. The fact remains that West Bend accorded Limbach Construction one of the options which *Grube* recognizes when the insurer intends to defend on the basis of lack of coverage—a "paid for" defense by an attorney of the insured's own choosing.

Contrary to the trial court's reasoning, the law does not bind the insurer to the tactics and strategy selected by the insured's attorney, thereby depriving the insurer of its coverage defense if that strategy should fail. The matter of tactics and strategy is properly left to the attorney and the client—here Beverly and Betty Limbach. Unless it abandoned its denial of coverage, West Bend had no authority to intervene in, or interfere with, that relationship. By not answering the Jacobs' complaint, Beverly and her client, Betty Limbach, made a tactical decision that was theirs, and theirs alone, to make.[7]

---

[7] Although we are not required to answer whether Beverly's strategy was correct, we do observe that certain law arguably supports her position. The designation, "d/b/a" means "doing business as" and is merely descriptive of the person or corporation who does business under some other name; it does not create or constitute an entity distinct from the person operating the business. *See Duval v. Midwest Auto City, Inc.*, 425 F. Supp.

■
We reverse the trial court's duty to defend ruling.[8]
We remand for the court to address West Bend's coverage defense.[9]

1381, 1387 (D. Neb. 1977), *aff'd,* 578 F.2d 721 (8th Cir. 1978). A deceased party cannot be named in a proceeding, *see Brickley v. Neuling,* 256 Wis. 334, 336, 41 N.W.2d 284, 285 (1950), and Betty Limbach was never substituted as a party, *see Martinson v. Brooks Equip. Leasing,* 36 Wis. 2d 209, 213 n.1, 152 N.W.2d 849, 851 (1967).

[8] In light of our holding, we are not required to address West Bend's further arguments that: (1) the Jacobs and Russo had no standing to raise the duty to defend question, (2) the duty to defend did not arise because the insured was not properly served, and (3) the decision of the Washington county probate court precluded the Waukesha county court from litigating the issue in this case. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (if decision on one point disposes of appeal, appellate court will not decide other issues raised).

[9] West Bend's appellate brief addresses the coverage issue at length. However, as we have noted, the trial court never addressed this issue. Nor do any of the other parties' appellate briefs respond to West Bend's coverage argument.

We recognize that the interpretation of an insurance contract presents a question of law which we review de novo. *Oaks v. American Family Mut. Ins. Co.,* 195 Wis. 2d 42, 47, 535 N.W.2d 120, 122 (Ct. App. 1995). However, even on such a question we value a trial court's decision. *See Scheunemann v. City of West Bend,* 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993). Since we have no trial court decision to review, and since we have no responding arguments from any of the other parties, we properly remand the coverage issue for the trial court to answer.

## 2. Jacobs' Cross-Appeal

The Jacobs cross-appeal the trial court's elimination of the jury damage awards for tuck-pointing and diminution in value and substituting therefore the stipulated costs for completely replacing the brick veneer on the residence.

The Jacobs first contend that because the arbitration decision directed Russo to tuck-point the masonry, and because the arbitration award was binding, the trial court erred by not enforcing that award.

We begin our discussion by stating our perplexity as to why this case went to trial on the pivotal questions in this case in light of the arbitration decision which had just been issued. The parties' briefs never squarely address this question. We acknowledge that the arbitration decision did not address the Jacobs' claims for certain of their collateral damages and that those matters remained to be litigated. However, the arbitration proceedings squarely addressed the threshold matter which lay at the heart of this controversy: whether the masonry work was defective, and, if so, what was necessary to correct the problem. Despite the decision of the arbitration panel on this point, the parties chose to relitigate the very same matter before the jury.

Arbitration is encouraged as an alternative to litigation. *Meyer v. Classified Ins. Corp.,* 179 Wis. 2d 386, 397, 507 N.W.2d 149, 154 (Ct. App. 1993). The goal of arbitration is to obtain a speedy, inexpensive and final resolution of disputes. *Id.* at 394, 507 N.W.2d at 153. However, parties may be deemed to have waived arbitration by their conduct:

> Any conduct of the parties inconsistent with the notion that they treated the arbitration provision as in effect, or any conduct which might be reasonably construed as showing that they did not intend to avail themselves of such provision, may amount to a waiver thereof and estop the party charged with such conduct from claiming its benefits.

*Id.* at 392, 507 N.W.2d at 152 (quoted source omitted). We decide whether waiver applies to the facts of this case as a matter of law. *See id.* at 394, 507 N.W.2d at 152.

Here, for whatever reasons, the parties chose to relitigate the very matter which the arbitration process had already addressed and decided. Thus, the arbitration process did not serve as a speedy, inexpensive and final resolution of the dispute which was presented to the arbitrators. *See id.* at 399, 507 N.W.2d at 154-55. The parties' post-arbitration conduct was inconsistent with the arbitration process.

If the Jacobs wanted the arbitration process to serve its intended purpose, they should have sought to limit the issues at the trial to the issue of their consequential or collateral damages. Instead, they, together with all the other parties, proceeded to relitigate the matter only recently arbitrated. Nothing is gained by seeking to enforce a prior arbitration decision when the dispute has been fully explored at trial, the jury has returned its verdict, and the court has pronounced its judgment.

Thus we turn to the Jacobs' alternative argument that the trial court otherwise erred in eliminating the damage awards for tuck-pointing and diminution in value.

The general principle regarding the measure of damages for defects and omissions in the performance of a building contract is simply that a party is entitled to have what he or she contracts for or its equivalent. *Tri-State Home Improvement Co. v. Mansavage*, 77 Wis. 2d 648, 656, 253 N.W.2d 474, 477 (1977). While this measure of damages seems straightforward in its statement, its application has sometimes proven troublesome when there is an issue as to whether the defective construction should be repaired or replaced and whether the work has been substantially performed despite the defect in workmanship. *See, e.g., Plante v. Jacobs*, 10 Wis. 2d 567, 572-74, 103 N.W.2d 296, 298-300 (1960); *DeSombre v. Bickel*, 18 Wis. 2d 390, 398-99, 118 N.W.2d 868, 872-73 (1963).

Generally, the measure of damages is the cost of correcting the defect or completing the omission and with this money, the aggrieved party can specifically correct the defects and supply the omissions. *W.G. Slugg Seed & Fertilizer v. Paulsen Lumber*, 62 Wis. 2d 220, 225-26, 214 N.W.2d 413, 416 (1974). If that repair process nonetheless still produces a diminution in value, such damage is also recoverable:

> The proper rule for measuring recoverable difference between substantial and complete performance of a building contract is not necessarily the costs of tearing down the defective work and rebuilding it so as to conform to the contract. It is the reasonable cost of remedying defects, so far as that can be done practicably, and the diminished value of the building so completed because of defects not so remediable.

*Id.* at 226, 214 N.W.2d at 416 (quoted source omitted).

However, "[t]his measure of damages is practical and attains the desired result *only when the correction or completion does not involve unreasonable destruction of the work done so that the cost of corrections is not materially disproportionate to the value of the corrections.*" *Id.* (emphasis added). If reconstruction and completion in accordance with the contract involves unreasonable economic waste, then the rule as to those defects at least is the difference between the value the building would have had if properly constructed and the value that the building does have as constructed. *Id.*

Despite the difficulty in applying these rules in some cases, this exercise presents little problem in this case. A comparison of the jury's answer regarding the costs of tuck-pointing against the parties' stipulation regarding replacement demonstrates that replacing the brick involves the least economic waste. Moreover, replacement gives the Jacobs what their contract with Russo called for. Tuck-pointing would not since it would still leave the Jacobs with a diminution in the value of their residence. Thus, the trial court's ruling was correct.

The court's ruling also avoided giving the Jacobs a windfall. If judgment were entered on the jury's verdict, the Jacobs would recover $135,000 for loss of value plus $110,500 for tuck-pointing. The Jacobs could apply the money earmarked for tuck-pointing to replacing the brick at a lesser cost. Yet, they still would have the diminution in value award when, in fact, no such diminution had occurred. An owner is entitled to recover for an actual loss, but not a greater amount. *See Nischke v. Farmers & Merchants Bank*, 187 Wis. 2d 96, 118, 522 N.W.2d 542, 551 (Ct. App. 1994).

Once the jury provided its damage answers as to tuck-pointing and the concomitant diminution in value, the trial court was in a position to determine the appropriate measure of damage. The court's substitution of the stipulated cost for brick replacement for the jury's "cost of repair/diminution in value" awards made the Jacobs whole and gave the Jacobs exactly what they contracted for.[10]

### 3. Russo's Cross-Appeal

Russo argues that the trial court erred by rejecting its proposed jury instructions that a general contractor is not liable for the negligence of an independent subcontractor. The court declined to instruct the jury on Russo's revised version of the standard instruction on the liability of one who employs an independent contractor and the definition of an independent contractor. *See* WIS J I—CIVIL 1022.6, 4060.

The trial court has wide discretion in giving jury instructions as long as they fully and fairly inform the jury of the rules and principles of law applicable to the particular case. *Farrell v. John Deere Co.,* 151 Wis. 2d 45, 60, 443 N.W.2d 50, 54 (Ct. App. 1989).

The general rule is that the liability of an independent contractor may not be imputed to a general contractor. *See Wagner v. Continental Casualty Co.,* 143 Wis. 2d 379, 388, 421 N.W.2d 835, 838 (1988); *see also Kettner v. Wausau Ins. Cos.,* 191 Wis. 2d 723, 736,

---

[10] The trial court did not disturb the jury's other awards to the Jacobs for their other incidental and consequential damages.

530 N.W.2d 399, 404 (Ct. App. 1995). A contractor qualifies as an independent contractor when the principal contractor does not control the details of his or her work. WIS J I—CIVIL 4060. However, our supreme court has ruled that this rule does not apply when a written contract between a general contractor and the landowner obligates the general contractor to "provide all necessary labor and materials and perform all work of every nature whatsoever to be done in the erection of a residence." *Brooks v. Hayes*, 133 Wis. 2d 228, 231, 395 N.W.2d 167, 168 (1986).

In *Brooks*, the general contractor contracted to construct a residence for the plaintiff and subcontracted with a mason who negligently installed a heatilator on a fireplace. *Id.* at 232, 395 N.W.2d at 169. A later fire caused damage to the plaintiffs' structure. *Id.* at 233, 395 N.W.2d at 169. The plaintiffs sued the general contractor who defended on the same grounds asserted by Russo here, claiming that he was not responsible for the negligence of the subcontractor whose work he did not control. *Id.* at 233, 395 N.W.2d at 169.

Relying on the contract language which obligated the general contractor to provide all necessary labor and materials and to perform all the work necessary to construct the residence, the supreme court rejected this argument. *Id.* at 234-36, 395 N.W.2d at 169-70. The court stated that "the delegation of the performance of a contract does not, unless the obligee agrees otherwise, discharge the liability of the delegating obligor . . . ." *Id.* at 236, 395 N.W.2d at 170. The court also held that the contract language "implicitly imposes on [the general contractor] the duty to perform with due care." *Id.* at 234, 395 N.W.2d at 169-70. The court further observed, "[A]ccompanying every contract is a

common-law duty to perform with care, skill, reasonable expediency and faithfulness the thing they agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *Id.* at 235, 395 N.W.2d at 170 (quoted source omitted). The court concluded that "[t]he public policy requiring that the risk of performance be nondelegable is thus applicable to both tort and contract." *Id.* at 248, 395 N.W.2d at 175.

The contract language in this case included the following promise by Russo:

> These specifications cover labor and materials necessary for the construction of a single-family, two-story residence according to pre-mentioned Model No. or plans submitted, to be erected for said Buyer at above address. All the work is to be executed in a workmanlike manner in accordance with the accepted standards of the building industry in this area and the plans and specification.

While this language is not exactly the same as in *Brooks*, its thrust is the same as the general contractor's promise in *Brooks*. In addition, the language obligated Russo to perform the work in a workmanlike manner and in accordance with the standards of the industry, language not present in *Brooks*. Finally, like the owner in *Brooks*, the Jacobs did not agree to discharge Russo from the liability which the law otherwise imposes on a general contractor who has made these written contractual commitments. *Id.* at 236, 395 N.W.2d at 170.

We therefore hold that the trial court did not err by refusing Russo's proposed instructions.

545

## CONCLUSION

On West Bend's appeal, we reverse the judgment and remand for the trial court to address West Bend's coverage defense. On the Jacobs' cross-appeal, we affirm the judgment. On Russo's cross-appeal, we affirm the judgment.

West Bend is entitled to costs on the appeal and the Jacobs' cross-appeal. Costs are denied to all other parties.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.