Daniel **NOWACKI**, et al., Plaintiff,

v.

**FEDERATED REALTY GROUP, INC.,**
**and Metro Title Service,**
**Defendants,**

**and**

**Continental Casualty Co., Intervening**
**Defendant.**

No. 97–C–1380.

United States District Court,
E.D. Wisconsin.

Feb. 11, 1999.

1100

John Rothstein, W. Stuart Parsons, & Richard G. Frohling—Quarles & Brady, Milwaukee, WI, for Defendants.

John R. Pendergast, Jr. and Victor Lazaretti—Crivello, Carlson, Mentkowski & Steeves—Milwaukee, WI, for Intervening.

## DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

The plaintiffs are a group of individuals, each of whom sold residential real estate in a transaction in which the defendant Federated Realty Group, Inc., acted as his or her broker. The plaintiffs bring this action pursuant to the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2601–2610. The plaintiffs contend that Federated referred them to a title insurance company, Metro Title Service, which was effectively controlled by Federated. The plaintiffs allege that Federated and Metro thereby violated the RESPA because: 1) the defendants did not disclose the relationship between Federated and Metro; 2) the defendants did not disclose the charges for Metro's title services, which were allegedly substantially higher than market prices; 3) the defendants did not disclose that the plaintiffs were free to "shop around" for the best title service rate available; and 4) the defendants misrepresented that the State of Wisconsin approved Metro's rates, that Metro's rates were the "prevailing industry standard," and that the buyer's lender could restrict the plaintiffs choice of title insurance companies. The plaintiffs filed their complaint on behalf of a class of persons, although the issue of class certification has not been resolved.

On May 26, 1998, the Continental Casualty Insurance Company ("Continental"), which issued a liability insurance policy to Federated, moved to intervene and filed its intervenor complaint, wherein Continental alleges that it does not have a duty to defend Federated in this action. On June 23, 1998, the court granted Continental's motion to intervene and accepted its intervenor complaint. The court also granted a limited stay of proceedings while the insurance coverage issue is under consideration. The parties consented to this court's full jurisdiction. *See* 28 U.S.C. § 636(c). Currently pending are Continental's and Federated's cross motions for summary judgment regarding the coverage issue.

## I. BACKGROUND

The following facts are undisputed for purposes of the parties' cross motions for summary judgment. Continental issued a Real Estate Agents Errors and Omissions Liability Policy to Federated, which was applicable from November 6, 1997, until November 6, 1998. The policy provides that Continental will become legally obligated to pay all amounts in excess of the deductible, up to Continental's limit of liability, which Federated becomes legally obligated to pay as a result of a "wrongful act." "Wrongful act" is defined as "a negligent act, error or omission in the rendering of or failure to render professional services." "Professional services" are defined as services rendered in the insured's capacity as a "real estate broker, agent, employee, salesperson, common law or statutory independent contractor, consultant, counselor, appraiser, property manager, leasing agent, mortgage broker or auctioneer; notary public; or a member of a formal real estate accreditation, standards review or similar real estate board or committee."

The policy also contains the following exclusions relevant to the instant case. Continental will not defend or pay under the policy for:

- any dishonest, fraudulent, criminal or malicious act or omission;
- any punitive or exemplary amounts;
- any multiplication of amounts payable under this policy imposed by law;
- damage you expect or intend;
- any claim arising out of the formation, syndication, operation or administration of any corporation, general or limited partnership, joint venture or real estate investment trust.

After Federated was served with the plaintiffs' complaint, it tendered the claim to Continental on January 15, 1998. Federated hired its own attorney on February 2, 1998, and then on February 11, Continental informed Federated that it would assume Federated's defense, but reserved all rights and defenses under the insurance policy. Specifically, Continental advised Federated that it would not provide coverage if judgment is entered against Federated for any liability arising out of dishonest, fraudulent, criminal or malicious acts or omissions. In response to Continental's February 11 letter, Federated informed Continental in a letter dated February 20, 1998, that Federated elected to pursue its own defense not subject to Continental's control but that Continental would remain liable for all legal fees incurred. Continental replied that it would provide Federated with independent counsel, provided counsel is selected by mutual agreement. Continental has not paid for Federated's defense up to this point.

## II. ANALYSIS

As noted above, both parties seek summary judgment. Federated contends that the court should: 1) confirm that Continental has an obligation under its policy to protect and indemnify Federated for defending this action; 2) confirm that Continental is obligated to indemnify Federated for any judgment entered in this action; 3) confirm that Continental is not entitled to select or control Federated's choice of counsel, given that Continental asserts various policy defenses; and 4) award Federated for all defense costs it has incurred and will incur.

Continental requests the following declaratory judgment: 1) that it has not breached its duty to defend because it properly sought a declaration of its coverage obligations; 2) that it has no duty to defend or indemnify Federated in this matter; 3) that it is not obligated to reimburse Federated for attorney fees or costs incurred to date because Federated refused to obtain Continental's agreement regarding Federated's selection of counsel; and 4) that if Continental has a duty to defend Federated, Federated must obtain Continental's mutual agreement regarding counsel.

The standards for granting summary judgment are familiar to all parties and need not be repeated. Suffice to say that summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

█ As an initial matter, even though jurisdiction in this case is based on a federal

question, interpreting the terms in an insurance contract is a question of substantive state law and the parties, and this court, believe it appropriate to rely on Wisconsin law. Although the court will review in turn each coverage defense raised by Continental, the standards for determining whether the insurer is under a duty to defend or indemnify are applicable to the entire insurance policy.

Whether an insurance company owes a duty to defend is a legal issue resolved by the court. *See Carney v. Village of Darien*, 60 F.3d 1273, 1277 (7th Cir.1995). "In return for the premiums paid by the insured, an insurance company owes its insured the duty to defend and indemnify for those claims falling within the parameters of the insurance policy." *Id.* (citing *Elliott v. Donahue*, 169 Wis.2d 310, 321, 485 N.W.2d 403, 407 (1992)). Under Wisconsin law, an insurer has a duty to defend if the complaint contains allegations which, if proven, gives rise to liability under the insurance policy's terms. *Id.* (citing *Sola Basic Industries, Inc. v. U.S. Fidelity & Guaranty Co.*, 90 Wis.2d 641, 646, 280 N.W.2d 211, 214 (1979)). "Any existing doubt as to whether an insurer owes a duty to defend is resolved in favor of the insured." *Id.* The duty to indemnify, on the other hand, is narrower than the duty to defend because the duty only arises once coverage has been established, as opposed to the potential for coverage. *See Newhouse v. Citizens Security Mut. Ins. Co.*, 176 Wis.2d 824, 834–35, 501 N.W.2d 1, 4 (1993).

### A. Policy Definitions
#### 1. Wrongful Act

As noted above, the policy at issue states that Continental "will pay all amounts in excess of the deductible, up to our limit of liability, which you become legally obligated to pay as a result of a *wrongful act* by you or by an entity for whom you are legally liable." (Emphasis added). "Wrongful act" is defined as "a negligent act, error or omission in the rendering of or failure to render professional services."

Continental argues that because the complaint alleges intentional acts by Federated, Federated is not covered by the policy because the policy only covers negligent acts, errors or omissions. In fact, according to Continental, the provisions of the RESPA relied upon by the plaintiffs require intentional conduct by Federated in order to establish a violation of the statute. Continental also contends that the policy does not cover risks associated with unfair business practices because such practices are not concerned with the rendering of professional services.

Federated maintains that the policy provision regarding "negligent acts" includes claims for breach of contract and breach of statutory obligations, as well as claims for traditional tort theories of negligence. Thus, according to Federated, as long as the insured's breach could be found to have been unintentionally committed, coverage exists. Federated argues that the plaintiffs' complaint focuses upon a disclosure form provided by Federated to its customers, which is allegedly deficient under the plaintiffs' interpretation of the RESPA. However, Federated contends that liability under the RESPA does not require proof of intentional or wilful misconduct; therefore, Continental is under a duty to defend Federated for this action.

Turning to the complaint, the plaintiffs claim that the defendants violated §§ 2607(a)-(c) of the RESPA, as well as corresponding provisions of the Code of Federal Regulations. Title 12, § 2607(a) provides:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

Section 2607(b) states:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

On the other hand, § 2607(c) states that the RESPA does not prohibit affiliated business relationships provided that disclosure is

made regarding the existence of the relationship to the person being referred and "such person is provided a written estimate of the charge or range of charges generally made by the provider to which the person is referred." The disclosure form must contain numerous details, such as informing the customer that, "you are NOT required to use the listed provider(s) as a condition for . . . [purchase, sale or refinance of] the subject property." 24 C.F.R. Pt. 3500, App. D.

Neither subsections (a) or (b) contain a statement of intent, but § 2607(d)(3) states that no person shall be liable for a violation of § 2607(c)(4)(A) "if such person or persons proves by a preponderance of the evidence that such violation was not intentional and resulted from a bona fide error notwithstanding maintenance of procedures that are reasonably adapted to avoid such error." Section 2607(d)(3) also provides that any person who violates § 2607 "shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."

■ In their complaint, the plaintiffs allege that Federated and Metro had an affiliated business relationship, that Federated referred each plaintiff to Metro for title services and that each plaintiff paid Metro a substantially above-market price for title insurance. The plaintiffs also allege that Federated's business relationship disclosure statement falsely states that the State of Wisconsin approved Metro's charges for title insurance, that Metro charges the prevailing industry standard rates, and that the statement does not provide an estimate of the charge for title insurance or a range of charges. In addition, the plaintiffs claim that Federated's disclosure statement did not disclose that Federated may receive a financial or other benefit from business conducted with Metro, did not inform the plaintiffs that they were free to shop around for title insurance, misleads customers into believing that they must obtain title insurance only from persons acceptable to the buyer's lender, does not disclose the meaning of "principals," does not capitalize the word "NOT" when it

states that customers are not required to utilize Metro's services, and does not state "THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES;" rather, the statement reads: "There are other businesses offering competitive services and products in our marketplace at a variety of prices depending on service or product."

■ The plaintiffs' complaint can be characterized as a mixture of intentional and negligent acts. As stated earlier, Federated is accused of violating three sections of the RESPA— §§ 2607(a)-(c). The RESPA contains a "safe harbor" provision only with respect to § 2607(c)(4)(A), which states that no person shall be found liable for violating that subsection regarding the disclosure provided if the person proves: 1) that the violation was not intentional and resulted from a bona fide error; and 2) that the error occurred notwithstanding procedures reasonably adapted to avoid such error. Because the safe-harbor provision is limited to violations of § 2607(c)(4)(A), and the other sections are silent as to intent, a reasonable inference is that liability may be established under §§ 2607(a) and (b) without the necessity of proving intent. Moreover, as Federated argues, the "safe harbor" provision of subsection (c) would not shield a person from liability if the person acted without intent, but did not have reasonable procedures implemented to avoid such error. Failure to establish such reasonable procedures could be a result of unintentional conduct. In *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 878 (7th Cir.1976), *overruled on other grounds, Brown v. Marquette Savings & Loan Assn.*, 686 F.2d 608 (7th Cir.1982), the Seventh Circuit reached such a conclusion with respect to identical language contained in the Federal Truth in Lending Act. While certainly not binding, such interpretation regarding an identically worded statute is persuasive.

Continental refers to certain allegations in plaintiffs' complaint wherein plaintiffs claim that Federated utilized "affirmative misrepresentations and misleading statements." While this is certainly language which con-

notes intent, this allegation only refers to alleged actions to induce the state to approve Metro's rates and not to all of plaintiffs' allegations. Indeed, the plaintiffs' complaint includes assertions that do not appear to allege intentional conduct, but rather conduct that was caused by error or omission. For example, the complaint alleges that Federated's disclosure statement did not capitalize the term "not" in "You are not required to use Metro ... as a condition for settlement of your transaction." Thus, if Federated's failure to capitalize "not" was inadvertent, but it lacked procedures to avoid such an error, Federated could be found liable under § 2607(c), although it did not act with intent. Such conduct falls under the policy's definition of a "wrongful act" because it would be a negligent act, error or omission in the rendering of a professional service.

### 2. Professional Services

■ Next, Continental argues that the policy does not insure for the allegations presented in the plaintiffs' complaint because the plaintiffs do not allege that Federated's acts were in furtherance of "professional services." As noted above, the policy insures for "wrongful acts," which are defined as "any negligent act, error or omission in the rendering or failure to render, professional services." "Professional services" is defined as services rendered in the insured's capacity as a "broker, agent, employee, salesperson, or common law or statutory independent contractor; consultant or counselor; appraiser; property manager; leasing agent; mortgage broker; auctioneer; notary public; or member of a formal real estate accreditation, standards review or similar real estate board or committee."

Continental contends that violations of the RESPA are not related to Federated's "rendering of professional services," because the risks of dishonesty and fraud are not accepted parts of a real estate practice. Federated maintains that Continental's argument rests on the faulty premise that liability under the RESPA is limited to intentional conduct.

In *Grieb v. Citizens Casualty Co. of New York,* 33 Wis.2d 552, 148 N.W.2d 103 (1967), the Wisconsin Supreme Court described the purpose behind a professional liability errors and omissions insurance policy:

> It is designed to insure members of a particular professional group from liability arising out of the special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession. The coverage generally excludes, as the instant policy does, intentional torts and dishonest, wrongful and malicious acts of commission and omission.

*Id.* at 556–557, 148 N.W.2d at 106.

Continental is correct that the plaintiffs' complaint alleges dishonest, wrongful and malicious acts. For example, the plaintiffs contend that Federated falsely stated that Metro's title insurance rates were approved by the State of Wisconsin. However, the plaintiffs also allege conduct that might have been caused by negligence. For example, Federated allegedly failed to include in its disclosure form an estimate of the charge for title insurance or a range of charges and, as noted above, Federated allegedly failed to capitalize the word "not" in its disclosure form. As the court previously noted, Federated could be held liable for such conduct even if it acted negligently because the "safe harbor" provision of § 2607(c) would not protect Federated if it failed to implement procedures sufficient to avoid the error in their disclosure form as alleged by the plaintiffs. Moreover, if Federated is found to have negligently, but not intentionally, omitted information regarding estimates of Metro's charges for title insurance and therefore violated the RESPA, such an omission was conducted in the course of Federated's capacity as a real estate broker because compliance with the RESPA is inherent to the practice of being a real estate broker. Therefore, the plaintiffs' complaint alleges conduct implicating Federated's negligent act, error or omission in the rendering of or failure to render "professional services," as the term is defined by the insurance policy. However, because the facts are in dispute regarding the character of Federated's alleged acts, i.e. negligent or intentional, whether Continental is under a duty to indemnify Federated must await the conclusion of the trial.

### 3. Metro's Status

■ Federated's insurance policy with Continental states that it provides coverage to the named insured (Federated), as well as the named insured's executive officers, directors, administrators or stockholders, and the named insured's broker's agents, employees, personal assistants, salespersons, or common law or statutory independent contractors, while acting within the scope of their duties for Federated. Continental argues that co-defendant Metro Title Service does not fit into any of the classifications to which coverage is afforded and therefore Continental is not under a duty to defend nor indemnify Metro.

However, the fact that Continental does not have to defend or indemnify Metro does not relieve Continental of its duty to defend Federated. While portions of the complaint are directed at Metro's acts—for example, the plaintiffs allege that Metro paid a portion of its gross income, including proceeds gained from selling title insurance to each class member, to its principals. Notwithstanding, the thrust of the plaintiffs' complaint is aimed at Federated's alleged acts in violation of the RESPA, which, if committed negligently, are covered under the policy. Therefore, although Continental is under a duty to defend Federated, Continental is not under a duty to defend or indemnify Metro because Federated did not produce any evidence to show that Metro fits under one of the categories of parties to which the policy applies.

### B. Policy Exclusions

Continental submits that the following exclusionary language contained in the policy relieve it of Continental's duty to defend or indemnify Federated: 1) dishonest, fraudulent, criminal or malicious acts or omissions/damage expected or intended; 2) claims based upon or arising out of the formation, syndication, operation or administration of any corporation, general or limited partnership, joint venture, or real estate investment trust; and 3) claims involving any punitive or exemplary damages or damages imposed by multiplication of amounts payable under the policy imposed by law.

### 1. Dishonest or Fraudulent Conduct

With respect to the policy exclusion for dishonest, fraudulent, criminal or malicious acts, the court's foregoing analysis in regard to "wrongful acts" applies to this policy exclusion. Because the complaint alleges conduct that could impose liability based on Federated's negligence, Continental is under a duty to defend Federated for the entire case.

### 2. Claims Arising Out of Formation of Corporation

■ As for the policy exclusion regarding claims based on or arising out of the formation of a corporation, Continental argues that the plaintiffs' claims relate to Federated's creation and maintenance of the referral arrangement to the financial benefit of themselves and their principals. Therefore, according to Continental, Federated's alleged RESPA violations are a function of the operation and administration of Metro, which is excluded by the policy language excluding claims based upon or arising out of the formation of a corporation.

However, as Federated asserts, the plaintiffs do not seek to hold Federated liable because it formed Metro; rather, the plaintiffs contend that Federated violated the RESPA because it did not disclose certain details regarding its relationship with Metro. Therefore, the plaintiffs' claims against Federated do not arise from Federated's operation of Metro, but Federated's conduct towards third parties regarding its relationship with Metro.

### 3. Punitive Damages

■ The final policy exclusion asserted by Continental are exclusions G and H, which exclude defense or payment for any punitive or exemplary amounts and any multiplication of amounts payable under the policy imposed by law. The plaintiffs seek treble damages against the defendants, which is authorized by 12 U.S.C. § 2607(d)(2). Therefore, Continental contends that any amounts due to covered conduct under the policy, which are the result of treble damages, are excluded by the policy. Federated responds that if the punitive damage provision of the policy applies, this does not relieve Continental of its

duty to defend. Federated also maintains that Continental must indemnify Federated for "non-multiplied" damages.

On the issue of multiplied or punitive damages, the parties are in agreement. Federated concedes, and the court concurs, that Continental is under no duty to indemnify Federated for multiple damages. The policy clearly excludes "multiplication of amounts payable under the policy imposed by law." The plaintiffs seek treble damages as specifically authorized by the RESPA. However, at this juncture of the proceedings, the nature of plaintiffs' award, if any, is unknown. Furthermore, if plaintiffs prevail, and if they receive treble damages, the indemnity exclusion only applies to the "multiplied" amount; what about the base or non-multiplied damages? Will such damages be covered? Indemnification to some extent remains a possibility. Continental cannot avoid its duty to defend based on exclusions G and H.

To conclude, the court finds that Continental is under a duty to defend Federated against the plaintiffs' action because the plaintiffs' complaint alleges acts that could be considered "wrongful acts" under Federated's insurance policy. However, because a factual dispute exists whether the acts alleged by the plaintiffs, if proven, were committed negligently or with intent, the court cannot determine whether Continental is under a duty to indemnify if judgment is entered against Federated. However, the court finds that if Continental owes Federated a duty to indemnify, Continental will only be liable for non-multiplied damages.

### C. Selection of Counsel

The last issue the parties raise in their cross motions for summary judgment is the degree of autonomy Federated may exercise in selecting its own counsel, and whether Continental is liable for Federated's attorney fees, in light of the fact that Continental is insuring Federated under a reservation of rights. Federated argues that once Continental informed Federated that Continental reserved its right to deny to indemnify Federated for intentional misconduct and criminal and malicious acts, Federated was free to pursue its own defense not subject to Continental's control. According to Federated, Continental must reimburse Federated for attorney fees incurred up to this point in the case and must pay all future attorney fees.

Continental states that it did not breach its duty to defend Federated in this action simply because it is proceeding under a reservation of rights. Therefore, Continental argues, Federated is not entitled to unilaterally select counsel and to have Continental reimburse Federated for its unilaterally selected counsel. Rather, Continental states that it is only obligated to pay the fees of counsel mutually agreeable to itself and Federated.

Continental has complied with the procedure for an insurer to retain its right to challenge coverage, while not breaching its duty to defend the insured, by informing the insured about the insurer's reservation of rights and seeking a declaratory judgment regarding the insured's duty to defend. *See Grube v. Daun*, 173 Wis.2d 30, 75, 496 N.W.2d 106, 123 (Ct.App.1992). The discrete issue for resolution here is which party controls the defense? May the insured unilaterally select counsel and seek reimbursement or payment for those attorney fees from the insurer when the insurer reserves its right to deny indemnification, or must the parties mutually select counsel before the insurer is required to pay for the insured's attorney fees?

Federated claims that it is entitled to control its defense and select counsel because there is a conflict of interest for Continental to defend under a reservation of rights. The "conflict," as seen from the discussion of the coverage dispute, is that Continental is not obligated to indemnify Federated for its intentional acts or for multiple damages. In light of this possible result, Federated submits it must have sole control over selection of counsel.

In *Grube*, the Wisconsin Court of Appeals described the procedures by which an insurer can retain its right to challenge coverage while not breaching its duty to defend. First, the insurer and the insured may enter into a nonwaiver agreement whereby the insurer agrees to defend and the insured acknowledges the right of the insurer

to contest coverage. Second, the insurer may request a bifurcated trial or declaratory judgment in order to have the coverage issue separately addressed by a court. Third, the insurer may provide the insured notice of its intent to reserve the right to contest coverage. "When a reservation of rights is made, the insured can pursue his own defense not subject to the control of the insurer, but the insurer still would be liable for legal fees incurred." *Id.* at 75, 496 N.W.2d at 123.

*Grube* is not directly on point with this case because the insurer in *Grube* lost its contractual right to control the insured's defense by inappropriately refusing to defend. *Id.* at 76, 496 N.W.2d at 124. Here, Continental has not refused to defend. However, *Grube's* statement with respect to the insured selecting its own counsel at the insurer's expense was applied in a case in which the insurer did not breach its duty to defend. In *Jacob v. West Bend Mut. Ins. Co.,* 203 Wis.2d 524, 553 N.W.2d 800 (Ct.App.1996), the Wisconsin Court of Appeals reaffirmed the options available to an insurer when it wants to raise a coverage issue and retain its right to challenge coverage. The court held that the insurer may request a bifurcated trial or declaratory judgment. Alternatively, the insurer may provide the insured notice of the insurer's intent to reserve its coverage rights, which "allows the insured the opportunity to a defense not subject to the control of the insurer although the insurer remains liable for the legal fees incurred." *Id.* at 536, 553 N.W.2d at 805. The court held that the insurer did not breach its duty to defend because it offered a " 'paid for' defense by an attorney of the insured's own choosing." *Id.* at 537, 553 N.W.2d at 805.

In the instant case, Continental chose to provide Federated notice of Continental's intent to reserve its right to contest coverage, which *Grube* and *Jacob* identify as an appropriate method for the insurer to preserve its right to challenge coverage. However, *Grube* and *Jacob* state that a consequence for the insurer who pursues this route is that the insured is allowed to select its own counsel at the insurer's expense. Continental, in effect, seeks to create a fourth alternative for con-

testing coverage, in addition to the three established in *Grube.* Continental argues, based on *Fireman's Fund Ins. Co. v. Waste Management, Inc.,* 777 F.2d 366 (7th Cir. 1985), that when an insurer notifies the insured of its intent to reserve its right to contest coverage, the insurer is liable for the insured's attorney fees only if the insurer and the insured mutually agree on counsel. However, *Fireman's Fund* does not create or mandate an additional option for the insurer in extension of *Grube* and *Jacob.*

In *Fireman's Fund,* the plaintiffs charged that Waste Management contaminated groundwater through its negligence or intentional acts. Waste Management's insurer, Fireman's Fund, advised Waste Management that it intended to defend Waste Management under a reservation of rights. Meanwhile, Fireman's Fund learned that Waste Management's attorneys might have a conflict of interest because they were related to the plaintiffs. Thus, Fireman's Fund retained its own attorneys, without Waste Management's consent. Waste Management objected to the firm chosen by Fireman's Fund, stating that the firm had a longstanding relationship with the insurer. Fireman's Fund then sought a declaratory judgment in the district court for the Western District of Wisconsin against Waste Management based on an alleged conflict of interest between Waste Management and its law firm. The district court noted that an obvious conflict arose between Fireman's Fund and Waste Management when Fireman's Fund reserved its right to contest coverage because it was in Waste Management's interest to have liability based on negligence, while it was in Fireman's Fund's interest to have liability based on intentional injury. *Id.* at 368. That is not unlike the situation in this case. The Seventh Circuit affirmed the district's court's opinion that this conflict was not rectified when Fireman's Fund selected counsel for Waste Management without the insured's consent. *Id.* at 369. Even though the district court found that Fireman's Fund had failed to provide independent counsel, because there were problems with Waste Management's initial selection of counsel, the court found that a fair and equitable method for resolving the conflict of interest between

the parties was for the insurer to select counsel, subject to the approval and at the expense of the insurer. *Id.* at 370. The Seventh Circuit affirmed the "mutually agreeable counsel" concept as being an equitable and reasonable way for the parties to end their dispute.

*Fireman's Fund* is not in conflict with *Grube* because the court only acknowledged the propriety of the insurer and insured agreeing on counsel. *See Fireman's Fund,* 777 F.2d at 369. The Seventh Circuit did not interpret Wisconsin law to *require* the insurer and insured to agree on counsel before the insurer is liable for the insured's legal fees. Moreover, where the determination of coverage is interwoven with the resolution of factual issues, Federated has a heightened interest in selecting its own counsel without input from Continental. Parenthetically, the court notes that other jurisdictions also allow the insured to select its own counsel, at the insurer's expense, when a conflict arises between the insured and the insurer regarding coverage. *See State Farm Mut. Automobile Ins. Co. v. Van Dyke,* 247 A.D.2d 848, 668 N.Y.S.2d 821, 823 (N.Y.App.Div.1998); *Ins. Co. of Illinois v. Fed. Kemper Ins. Co.,* 291 Ill.App.3d 384, 225 Ill.Dec. 444, 683 N.E.2d 947, 950 (1997); *Mutual Service Casualty Ins. Co. v. Luetmer,* 474 N.W.2d 365, 368 (Minn.Ct.App.1991); *San Diego Navy Fed. Credit Union v. Cumis,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494, 497–498 (1984).

▇ Under the circumstances of this case, the court concludes that, once Continental tendered its defense to Federated under a reservation of rights, a conflict of interest was created between Federated and Continental. As such, Federated was free to control it defense and select its own counsel. While the parties are also free to mutually agree on counsel, such a procedure is not required. This means that Continental is liable for all attorney fees Federated has incurred and will incur to defend this action. However, Continental is not liable for fees incurred for Metro's defense, which is also represented by Federated's counsel, because Metro is not insured by Continental. In this regard, Federated will be obligated to apportion the expenses incurred for defending

each entity, recognizing that there may be some overlap. The court declines to make any findings or order at this time regarding the amount of attorney fees. The parties are directed to attempt to agree upon Federated's legal fees incurred to date. If the parties are unable to reach an agreement, Federated may file a motion for attorney fees, supported with sufficient documentation, and Continental may respond accordingly.

**IT IS THEREFORE ORDERED** that:

1. Federated's motion for summary judgment is **granted in part and denied in part.** Federated's motion is granted in the following respects: a) Continental is under a duty to defend Federated for this action; b) Continental is not entitled to select or control Federated's choice of counsel; c) Continental must reimburse Federated's attorneys' fees incurred for defending this case, but reimbursement for fees to date must be brought by way of a separate motion if the parties are unable to agree. Federated's motion is denied with respect to the issue of indemnification because a factual dispute exists regarding whether Continental must indemnify Federated for any judgment entered in this action.

2. Continental's motion for summary judgment is **granted in part and denied in part.** Continental's motion is granted in the following respect: Continental did not breach its duty to defend Federated because it properly sought a declaration of its coverage obligations. Continental's motion is denied in the following respects: a) Continental is under a duty to defend Federated; b) a factual dispute exists whether Continental must indemnify Federated for any judgment entered in this action; c) Continental must reimburse Federated for attorneys fees and costs incurred to date under the procedure stated by the court. d) Federated does not have to obtain Continental's consent regarding Federated's choice of counsel.

The court lifts the limited stay of proceedings and will conduct a telephone conference on **Monday, February 22, 1999, at 8:30 a.m.**

to discuss further scheduling. The court will initiate the call.